JOHN MAHON *v.* BOARD OF MAYOR AND ALDERMEN OF CITY OF COLUMBUS.

1. CONTRACT. *Action for breach. Suit to rescind. Not inconsistent.*
   Where the obligee in a bond given for the faithful performance of a contract brings an action at law upon the bond to recover damages resulting from a breach of the contract, and at the same time proceeds by a bill in chancery to have the contract rescinded, the two suits are entirely consistent.

2. MUNICIPAL CORPORATION. *Power to contract. Right to rescind. Case in judgment.*
   The mayor and aldermen of the city of Columbus were authorized by its charter " to provide the city with water for the use of the fire department or of the citizens, by water-works within or beyond the boundaries thereof." The water-works were erected, and used principally for furnishing water for the fire department, and to a limited extent for private citizens. The mayor and aldermen leased the water-works to M. for fifteen years, who contracted, in writing, to keep all the machinery of such works in good working order, to keep the reservoir supplied with water, and, upon an alarm of fire, to put the pumps at work to extinguish the same. M. was to derive his compensation solely from private persons whom he might supply with water. He gave bond, with sureties, for the faithful performance of his duties under the contract. He did not perform those duties, but was frequently intoxicated, and many times failed to keep the requisite supply of water in the reservoir. On one occasion, when there was a fire in the city, one of the fire-engines had to

cease work because of a lack of water; and upon another occasion, when the county jail was in flames, M. was so intoxicated that he could not operate the machinery of the water-works, and another machinist being called in, found the pumps in such bad condition that they could not be worked until several hours had elapsed; and finally, by his ignorance, carelessness, or drunkenness, M. allowed water to stand and congeal in the pipes and cylinders of the machinery, whereby they were burst. Thereupon the mayor and aldermen filed a bill in chancery to have the lease rescinded. It does not contain any stipulation for a power of revocation, or for a forfeiture upon the failure of the lessee to perform his obligations. *Held,* that, as the charter did not specify how the water-works should be operated, the city authorities had the power to have it done by contract; but they could not cede away their control of such works for a long period, so that the city would lose its right to invoke the jurisdiction of chancery to put an end to the contract whenever its continuance should imperil the safety and existence of the city. And it is only by holding that the city has the right, upon the facts of this case, to have the contract rescinded, that it can be allowed ever to have had any validity.

APPEAL from the Chancery Court of Lowndes County.

Hon. F. A. CRITZ, Chancellor.

The case is stated in the opinion of the court.

*Orr & Sims,* for the appellant.

1. The appellees were estopped by the judgment at law from proceeding in this suit. The proof shows that when the bill of complaint in this cause was filed, there was pending in the Circuit Court of Lowndes County a suit upon appellant's bond given under the contract here sought to be rescinded, which suit was based upon the identical breaches of contract named in the bill of complaint.

At a former stage of the case, appellant filed a petition in the court below setting forth this fact, and asking that appellees should be compelled to elect whether they would proceed at law or equity. The Circuit Court suit had not then gone to judgment, and the motion was overruled by the chancellor. The record shows that before final hearing of this cause in the Chancery Court, judgment was rendered in said Circuit Court suit against appellant for $250. At the final hearing we submitted this principle to the chancellor, and ask its consideration by this court: that when the remedies at law and equity are inconsistent, any decisive act of the party under

either jurisdiction, with knowledge of his rights and of the facts, determines the election. *Sanger* v. *Wood*, 3 Johns. Ch. 416; *Cobb* v. *Hatfield et al.*, 46 N. Y. 533; *Masson* v. *Bovet*, 1 Denio, 69. The record shows that on the 14th of April, 1879, before the filing of the bill in this cause, the action on Mahon's bond was commenced in the Circuit Court of Lowndes County, and in April, 1880, judgment for $250 was rendered for the City of Columbus. The Circuit Court suit was not in tort, but was based upon the validity of the contract—the same contract that is sought by this suit to be annulled and rescinded on the ground of invalidity. Can it be maintained that the pending suit to rescind the contract is not inconsistent with the judgment in the Circuit Court affirming it? Having elected to rely upon the validity of the contract by a suit at law, can appellees be now suffered to say that the judgment obtained by them was upon an invalid contract, and that the Chancery Court should so declare and annul it?

The doctrine of election is founded upon the principle that there is an implied condition that he who accepts a benefit under an instrument must adopt the whole of it, renouncing any right inconsistent therewith. Herman on Estop., sects. 467–469, 475. We admit the principle that appellees might have sued for damages in the Circuit Court, not through the contract, which they assert is void *ab initio*, but in tort. This was not done, however, but the suit at law relied upon the validity of the contract. All that can be said for the proof in this case is, that appellant had been guilty of such acts of negligence as made him liable for such damages at law as appellees sustained. "The plaintiff must show a title to relief beyond the mere technical breach of duty, which would confer a right of action at law." Willard's Eq. Jur. (2d ed.) 303.

2. While the bill of complaint makes no intimation that appellant's contract was *ultra vires* the city authorities, at the final hearing of the cause counsel for appellees argued at great length that the contract should be rescinded because it was *ultra vires* and against public policy. We contend that appel-

lant had a right to be informed by the pleadings of what sort of a case he was called upon to meet, that he might put all the averments necessary to make out appellees' case at issue by his answer, or assail them by demurrer.

It is a well-established principle of equity pleading, says Judge Story, that every material allegation should be put in issue by the pleadings, so that the parties may be duly apprised of the essential inquiry, and be enabled to collect testimony to meet it. Story's Eq. Pl., sects. 28, 246, 257.

Complainant cannot recover on a case different from that alleged. Geo. Dig. 897, sects. 510, 511, and cases cited.

"As a general rule, conclusions of law need not be averred, but when certain facts are stated from which it is intended to draw a conclusion of law, the bill ought to be so framed as to give notice to the defendant of the plaintiff's intention to insist on such conclusion ; otherwise he will not be allowed to do so." 1 Dan. Ch. Pr. (5th ed.) 372.

The bill of complaint neither avers facts nor conclusions of law foreshadowing in the remotest manner that a cancellation of the contract would be sought on the ground of *ultra vires*. The bill does not set out the city charter, and it does not appear in the pleadings or evidence of the record. The charter of Columbus, granted by the Legislature January 27, 1872, was never "published by authority." The court cannot take judicial notice of it. It was never "prescribed" as a public law. It must be pleaded and proven by authenticated copy.

But the contract, we contend, is within the charter powers of the city, and is not *ultra vires*. The charter of Columbus granted by an act approved January 27, 1872, is the charter under which said mayor and aldermen acted. In the enumeration of powers in sect. 10 of the charter, and under the fifth head, the following language is used: "5. To provide the city with water for the use of the fire department, or the citizens, by water-works within or beyond the boundaries thereof." The authority here granted to the mayor and aldermen is

broad; the method of its execution is wholly left to their dis-
cretion.    Under this clause the mayor and aldermen could get
the water-supply from the river or the clouds, in cisterns or
from wells; they could rent apparatus necessary therefor, or
buy it; they could contract for labor by the day, the year,
or a series of years.    28 Ga. 50.    Paragraph 15 of sect. 10
further empowers the board " to pass all ordinances, not con-
trary to the Constitution of the United States or of the State
of Mississippi, which may be necessary to carry out the full
intent and meaning of this act, and to accomplish the object
of this incorporation, and to promote the interests of the
city."

We admit that " municipalities are governments of enumer-
ated powers;" that they can only exercise such powers as (1)
those granted by express words; (2) those necessarily and
fairly implied; (3) those essential to declared objects;
and that all beyond the scope of the powers granted is
void.    Cooley's Const. Lim. 175 n, 192–195; Dill. on Mun.
Corp., sects. 55, 381; Sykes v. Columbus, 55 Miss. 115.
We admit also that courts adopt a strict rather than a liberal
construction of powers granted to municipalities, with this
modification: that " powers expressly granted, or necessarily
implied, are not to be defeated or impaired by stringent con-
structions.    Dill. on Mun. Corp., sect. 175.    But we nevertheless
contend that the contract of appellant was within the charter
powers of the city of Columbus.    It will be observed that, in
conferring powers upon the city to provide a water-supply, a
twofold purpose was contemplated: (1) to provide water
" for the use of the fire department," and (2) " for the use
of the citizens."    The mayor and aldermen met these two
objects in their contract.    In consideration that the contractor,
Mahon, should keep the fire department supplied with water,
he was granted the privilege of using the city water-works
to supply citizens, and to receive his pay through private
purchases of water-rights.    The contract, in express words,
reserves to the mayor and aldermen " entire control of the

reservoirs, cisterns, fire-plugs, for repairs and alterations when necessary, the unrestricted use of the same and the water therein contained, in case of fire and for all other purposes incident to the fire department of the city." Even where no express authority has been given, it has been held that a city having power to pass ordinances respecting health and police is authorized to procure a supply of water, and is a judge of the mode best adapted to accomplish the object. Dill. on Mun. Corp., sects. 58, 97, 669 (citing 31 Ala. 542; 28 Ga. 50; 43 Ga. 67; 8 Mich. 458; 19 Ga. 486).

But the two paragraphs quoted from the charter give ample authority to make the contract. "When municipal corporations are authorized to contract, they are bound thereby as individuals." Dill. on Mun. Corp., sect. 394, note 2. "A municipal corporation has no more right to rescind a contract legally made than an individual." Abb. Dig. Corp. 520, sect. 409.

A municipal corporation, acting within the scope of its power, in order to secure the erection of gas-works, passed an order whereby the gas-works and other income were placed in the hands of trustees for the benefit of those who loaned the money to execute the undertaking. Such ordinance was held to be a binding contract, and could not be violated by the city although it may deem it for the interest of the citizens to do so. Nor is it in the power of the Legislature to authorize its violation. Dill. on Mun. Corp., sects. 41, 395.

To secure economically a supply of water for the fire department, was it not competent, under this doctrine, for the city authorities of Columbus to contract with appellant for the use of the surplus water for a series of years? No monopoly was given him: other persons were at liberty to undertake to supply the citizens with water from other sources than the city's water-supply. Hence the contract is not obnoxious to those cases like *The State* v. *Cincinnati Gas-Light Company*, 18 Ohio, 262, where an *exclusive* right to use the streets and

alleys of the city to lay down gas-pipe, for twenty-five years, was granted to a private corporation; nor like *Milhau* v. *Sharp*, 27 N. Y. 611 (cited in Dill. on Mun. Corp., sect. 61), where it was held that the New York corporate authorities, without express power, could not contract for a street-railway company to use the streets of a city indefinitely, as streets were held in trust for the public benefit.

We submit that the contract was within the scope of the powers delegated to the contracting mayor and aldermen by the charter of the city.

*J. E. Leigh*, for the appellees.

1. The contract was *ultra vires* the Board of Mayor and Aldermen, and is void. Municipal corporations, such as towns and cities, can only exercise limited and delegated powers. Dill on Mun. Corp., sect. 55 ; *Sykes* v. *Mayor, etc., of Columbus*, 55 Miss. 115–138. As was said in the case of *City of Jackson* v. *Bowman*, 39 Miss. 639, by Mr. Justice Harris : " It was not in the power of this corporation to do any act or to make any contract in violation of the plain duties enjoined by these provisions. It was not in its power to sell a discretion and authority specially delegated to it to be used for the public good, and thereby prevent itself from further exercise of such discretion and authority from time to time, as the exigencies of the city might demand. It was not in its power by contract to divest itself of this public official duty irrevocably for a term of years, for private benefit or advantage."

" Powers are conferred on municipal corporations for public purposes ; and as their legislative powers cannot be delegated, so they cannot be bargained or bartered away. Such corporations may make authorized contracts, but they have no power as a party to make contracts or to pass by-laws which will cede away, control, or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties." Dill. on Mun. Corp., sect. 61. " The principle is a plain one, that the public powers or trusts de-

volved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others.''    Dill. on Mun. Corp., sect. 60.

The transfer by the mayor and aldermen of their public supervision of the water-works of the town, which was public property, to Mahon, a private individual, was beyond the scope of their powers, and therefore void.

The principle is clear that the municipal corporation known as '' The Mayor and Aldermen '' are but the agents and trustees of the people, who own the public property intrusted to them officially, and any attempted alienation of such property, by giving the revenues arising therefrom to a private individual, as was done by the contract with Mahon, would be a breach of the trust, and therefore *ultra vires* and void. Id., sect. 381.    The power to suppress fires is delegated to municipal corporations, to be exercised for the public good.    Id., sects. 93, 94.    The corporation may alien its private property, but it cannot cede away the power of municipal control.    Id., sect. 445.    These water-works were exclusively of a public nature, — to wit, to extinguish fires and to furnish citizens a water-supply, as shown in the charter, — paid for by taxation, and it was beyond the scope of the authority of the Board of Mayor and Aldermen to prostitute them to the use of an individual.    Such act was *ultra vires*, and is void.    *People's R. Co.* v. *Memphis R. Co.*, 10 Wall. 52.

The power of a corporation to make a contract which should limit its legislative control forever thereafter was denied by the Supreme Court of the United States in *Goszler* v. *Corporation of Georgetown*, 5 Curt. 183, 184.    In *Martin* v. *Mayor of Brooklyn*, 1 Hill, 519, the court say :    '' To allow that commissioners of streets and highways may bind themselves by contract to subserve the interests of individuals would be a clear violation of public policy.''    The principle is too well supported by authority to be denied, that municipal corpora-

tions hold public property in trust for the people; that such property cannot be prostituted to the private interests of individuals; that the corporation cannot dispossess themselves of the legislative control they have of such property; that they are mere trustees, and any contract which disables them from such control is *ultra vires.* Green's Brice's Ultra Vires, 610–613; *Stuyvesant* v. *New York,* 7 Cow. 605; *City of Macon* v. *Patty,* 57 Miss. 378; 6 Wheat. 103; 21 How. Pr. 255; 14 N. Y. 506; 27 N. Y. 621; 18 Ohio, 291.

2. The contract should be rescinded because the consideration thereof has failed. " Where several continuing acts are to be performed, a partial failure to perform may be so destructive of the contract as to give the other party the right to consider the whole contract rescinded." 2 Pars. on Con. 680 [836]. This is exactly the case with this contract with Mahon. He was to perform several continuing acts, and a failure to perform only one would be sufficient to rescind the contract. They were of such vast importance that a failure in any one necessarily forfeited the contract. But Mahon grossly violated his contract in many instances. " Generally, where one fails to perform his part of the contract, the other party may treat the contract as rescinded." Id. 678 [834]. If a contract be once broken by a breach in its performance, the contract is at an end. U. S. Dig. 1876, p. 173, sect. 205; *Elting Woollen Co.* v. *Martin,* 5 Daly, 417; *Harper* v. *Hassard,* 113 Mass. 187; *Wharton* v. *Missouri Car Foundry Co.,* 1 Mo. 577; *Anderson* v. *Haskell,* 45 Iowa, 45; *Seipel* v. *International Ins. Co.,* 84 Pa. 47; *Jefferson County* v. *Arrighi,* 51 Miss. 667.

3. Is a court of equity the proper tribunal in which to seek redress for grievances of this character? " In cases of a partial failure of a contract, the weight of authority is that the remedy is in a court of chancery." *Parham* v. *Randolph,* 4 How. 435. A court of chancery is the proper jurisdiction to correct an abuse of corporate powers. Dill. on Mun. Corp.,

sects. 727–730, and cases cited ; Willard's Eq. 303, 308, 309 ; Story's Eq. Jur. 709, 710.

4. The motion of the appellant to require the appellees to elect whether they would proceed at law or in equity was properly overruled.   The action at law was for damages which had already accrued.   The bill in chancery was to prevent damages that were threatened, and for the rescission of the contract.   The rule is admitted that a party will be compelled to elect where the subject of the suits is the same ; but no election is required where the subject-matter of the suits is different one from the other.   *Boyd* v. *Hentzleman*, 1 Ves. & Bea. 380, note *a; Laraussini* v. *Carquette*, 2 Cushm. 151 ; *Speight* v. *Porter*, 4 Cushm. 286.

*G. A. Evans,* on the same side.

1. This proposition is conclusive of this case :   That the mayor and aldermen had no power to delegate to Mahon the control of the city's water-works so that they or their successors could not resume control whenever they might see fit.   And the contract leasing to Mahon "the sole and exclusive privilege" of using the water-works for fifteen years, so as to embarrass the control of the city over this property, was *ultra vires* and void.   For the mayor and aldermen were agents holding this property in trust.   They had been clothed with certain powers.   In them was vested the legislative control of the city property.   They could not for fifteen years, nor fifteen minutes, delegate their control to Mahon, nor convey away their right to resume absolute control whenever they might deem it necessary.   " It cannot be that powers vested in the corporation as an important public trust can thus be frittered away or parcelled out to individuals or joint-stock associations, and secured to them beyond control."   Cooley's Const. Lim. 204–208.

" The people [or the Legislature, when it created the municipality] have selected the depositary of the powers which they designed should be exercised, and in confiding it to such depositary, have impliedly prohibited its being exercised by

any other agency.     A trust created for any public purpose cannot be assignable at the will of the trustee.     Equally incumbent upon the State Legislature and these municipal bodies is the restriction that they shall adopt no irrepealable legislation.     No legislative body can so part with its powers, by any proceeding, as not to be able to continue the exercise of them. · It can and should exercise them again and again, as often as the public interests require.     Such a body has no · power, even by contract, to embarrass its legislative powers and duties."     Id. 205, 206.     The Legislature of the State of Mississippi, in creating the municipality of Columbus, designated the officers who should exercise the legislative control over the public property of the city.     They confided in the mayor and aldermen the duty to manage the trust property, and gave them certain powers.     Among these was, " to provide the city with water for use of the fire department or the citizens, by water-works within or beyond the boundaries thereof."     Among the many subjects confided to their legislative control was that of providing against fires — water, etc.     To this end the city intrusted to their keeping thousands of dollars' worth of property — engines, reservoirs, hydrants, cisterns, pipe, tanks, etc.     It was the duty of the mayor and aldermen to increase these as the necessities of the town increased, and at all times so to legislate in reference to them that the objects intended — to-wit, immunity from fires, and water conveniences — might be enjoyed.     And they themselves were to be the judges as to what was required by the town and what should be done.

Under the charter and the objects of municipal government, the courts cannot decide whether Mahon is a fit or unfit person to control the city's water-works.     That matter has been vested in the mayor and aldermen by the Legislature.     They should determine that, and legislate accordingly ; and whenever they seek to rob a subsequent board of this discretion, it is *ultra vires*.     Says Mr. Dillon : " The public powers or trusts devolved by law or charter upon the council or govern-

ing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others." Dill. on Mun. Corp., sect. 60. Again: " Powers are conferred upon municipal corporations for public purposes, and as these legislative powers cannot be delegated, so they cannot be bartered away. They have no power to make contracts or pass by-laws which shall cede away, control, or embarrass their legislative or governmental powers." Id., sect. 61. See also Id., sects. 381, 382, 567. And the suppression of fires is one of the powers delegated to the mayor and aldermen for the public good. Id., sects. 33, 34.

The corporation may alien its private property, but it cannot cede away the power of municipal control. Id., sects. 445, 512. But in this contract with Mahon the property is not attempted to be ceded away. The legislative control — the very thing they cannot cede away — is the very thing granted. The legislative control over city property is gone, and no legislation can be had except subservient to Mahon's contract. This the law will not allow. Id., sects. 61, 382, 567; Cooley's Const. Lim. 205–208; *People's R. Co.* v. *Memphis R. Co.*, 10 Wall. 52; *Martin* v. *Mayor of Brooklyn,* 1 Hill, 543; *Church* v. *New York*, 5 Cow. 540–542; *Stuyvesant* v. *New York*, 7 Cow. 65; *Goszler* v. *Georgetown*, 6 Wheat. 597, 598; *Goszler* v. *Georgetown*, 5 Curt. Dec. 183; *City of Jackson* v. *Bowman*, 33 Miss. 633; *Britton* v. *New York,* 21 How. Pr. 255; *Milhau* v. *Sharp*, 27 N. Y. 621; *Davis* v. *Mayor, etc.*, 14 N. Y. 552; *The State* v. *Cincinnati Gas-Light Co.*, 18 Ohio St. 231, 232, 235.

2. The action at law and this suit in chancery are not for the same thing; the two cases are as distinct as can be. And the rule in relation to this matter of election is this: " The plaintiff will not be put to an election unless the suit at law is for the same cause, and the remedy offered coextensive and equally beneficial with the remedy in equity." 1 Dan. Ch. Pr. 634, and note 3, and cases cited p. 815; *Rogers* v. *Vosburg*, 4 Johns. Ch. 84; 1 Hoffm. Ch. Pr. 342; Story's Eq.

Pl., sect. 742 ; *Laraussini* v. *Carquette*, 2 Cushm. 151 ; *Speight* v. *Porter*, 4 Cushm. 218, 286 ; *Payne* v. *Harrell*, 40 Miss. 498 ; Geo. Dig., sects. 187, 390 ; *Boyd* v. *Hentzleman*, 1 Ves. & Bea. 382.

The court of law can only give us damages already accrued ; but does this prevent us from protecting ourselves in chancery from the future danger?   The court of chancery gives us the future enjoyment of our property by removing the lease ; the court of law gives us our damage for past destruction of our property.   In this State the Court of Chancery can only remove the cloud.   There its jurisdiction ceases, and we are compelled to go to law for our damages.   See *Huntington* v. *Allen*, 44 Miss. 654 ; *Phelps* v. *Harris*, 51 Miss. 783.

*L. Brame*, on the same side.

1. Should the court hold that it was competent for the city authorities to make the contract in question, still it cannot be true that it was within their power to put in the possession of Mahon the water-works of the city and the valuable franchise connected therewith, for a long term of years, and to divest themselves and their successors of all control over such party as to the manner of discharging the duties he assumed.   This power of control included the right to discharge the party and revoke the contract if it was not complied with.

2. The jurisdiction of a court of equity to rescind a lease rests upon narrow grounds, it is true.   But this is not the case of an ordinary lease, as the letting of a house or a lot of land. The subject of the contract is the public property of the city, the preservation and proper use of which is necessary, and indeed indispensable, in the due administration of the affairs of the municipality.   The parties could not assume that there existed on the part of these officers, who were mere agents of the people with limited powers, the unrestricted right and authority to deal with this property as an individual could in respect to his own.   Besides, Mahon was not an ordinary lessee, with an indefeasible vested right to hold the property for his individual gain after the contract was made.

He was selected with a view to certain personal qualifications, was charged with important duties, and was subject to control in the discharge of those duties.

Conceding the power to make the contract, it is perfectly clear from the evidence that Mahon has violated it, and that he is incompetent, by reason of his habits of drunkenness, his ignorance and want of skill, to perform his duties under the contract; and the court will, in the interest of the citizens, decree a cancellation of the agreement.

The contract is a continuing one, depending upon the performance of the stipulations on each side. The appellant will not be suffered to retain possession of the property and enjoy the valuable franchise which has been granted to him, without performing his part of the agreement. 2 Pars. on Con. 680, 681; 2 Story on Con., sect. 1337; *Brandon* v. *Brandon*, 46 Miss. 222; *Townsend* v. *Hurst*, 37 Miss. 679. See also *Etheridge* v. *Ragsdale* (MS.), decided by this court at the October term, 1879.

In addition to the ground above stated for the cancellation of the lease, there is the element of danger to the city in allowing the appellant, who is utterly incapacitated for the position, to remain in charge of the water-works.

3. The remedy is in equity. An action at law for damages would be entirely inadequate. If the appellant has forfeited his rights under the contract, the city is not only entitled to the possession of the property, but may have the lease cancelled.

The jurisdiction may be maintained upon the principle of a bill *quia timet*.

4. There is nothing in the idea that the city is precluded from maintaining this suit because of having recovered judgment on the bond. The doctrine of election of inconsistent remedies has no application, because the remedies are not inconsistent. It is perfectly consistent that the city should recover the judgment for the damages already sustained, which were covered by the bond, and that this bill should be filed

on behalf of the public interests involved to rescind the contract.

CHALMERS, C. J., delivered the opinion of the court.

The mayor and aldermen of Columbus leased to John Mahon, for a term of fifteen years, the water-works of the city.. The lessee bound himself by the terms of the written contract to keep and preserve all the machinery and appurtenances connected therewith in good condition and working order; always to keep the reservoir into which the water was by the machinery to be pumped, filled to a certain specified height; and immediately upon an alarm of fire being given, at once to put the pumps to work, with a view of insuring an ample supply of water. The city was to pay nothing to Mahon for these services, but he was to derive his compensation from the sums received from private persons for supplying them with water. The works seem to have been originally erected and principally used for furnishing water for the fire department of the city, and to have been utilized to a very limited extent by private citizens.

The lessee, however, was authorized to supply them, provided he did not thereby diminish the quantity of water in the reservoir below the specified limit, and was in this way to receive his compensation. He gave bond, with security, for the faithful observance of his duties. He did not perform those duties. He was repeatedly, if not habitually, intoxicated, and there were very many periods at which there was a failure to keep the requisite quantity of water in the reservoir. Upon one occasion, during a fire, one of the fire-engines of the city was compelled to cease operations because of an insufficiency of water. Upon another occasion, while the county jail was in flames, Mahon was so intoxicated as to be unable to put his machinery in operation, and when another machinist was called in for the purpose, the pumps were found in such a condition that several hours elapsed before they could be started. Finally, by his igno-

rance, carlessness, or drunkenness, water was allowed to stand and congeal in the pipes and cylinders connected with the machinery, whereby they were burst, and the city forced to replace them at a heavy expense. Thereupon an action at law was instituted by the city in the Circuit Court upon his bond, to recover damages for the loss sustained, and this bill was filed in the Chancery Court to cancel and annul the lease.

It was objected by plea that both suits could not be maintained at the same time, and it was asked that the city should be compelled to elect which remedy it would pursue, upon the ground that it could not recover damages upon a contract in one court which it was seeking to annul in another. The motion was properly denied, as was the one subsequently made, to dismiss this bill after there had been a recovery in the action at law. Two inconsistent remedies cannot be sought for the same subject-matter — as, where a party seeks at the same time to recover upon a contract, and to have it declared null and void *ab initio;* but the principle does not apply where it is sought to recover damages for the breach of a contract, and to put an end to the contract because of such breach. In such case the ends sought are wholly different, and the remedies invoked not inconsistent. One demands indemnity for the past; the other, security for the future.

In this case, the recovery at law, as shown by the record, was for the broken machinery; the suit in equity seeks to put an end to a contract which the lessee has by his conduct demonstrated his inability or his unfitness to carry out. There is no stipulation in the lease that a failure upon the part of the lessee to comply with the obligations imposed upon him shall work a forfeiture of it; and this, ordinarily, would estop a court of chancery from declaring a forfeiture. It is quite clear, for instance, that a mere failure to pay rent at specified dates, or to erect buildings or make repairs, would not authorize a court to put an end to a lease, in the absence of a stipulation to this effect, because in such case each party must be supposed

to have looked to his remedy at law to recover damages for a breach of the contract; and especially must this be so where a bond has been delivered for the payment of such damages.

But cases may arise, even between private persons, where the duty is of such continuing character, and where the failure to observe it is at once so destructive of the objects of the contract and so impossible of a forced observance by law, that the courts will put an end to it at the instance of the aggrieved party.

The duty of the courts to grant such relief where the interest of the public is concerned becomes imperative, and it is difficult to conceive a cause which could more urgently demand it than the present. The water-works of the city of Columbus belong, not to the mayor and aldermen of the city, but to the citizens. They were erected at heavy expense, out of the public treasury, for the purpose of furnishing a safeguard against fires and a means of supply for private persons. While there seems nothing in the city charter directly prohibitory of such a contract as was here made, we think, when made, it must be held subordinate to a right in the courts to put an end to it whenever it is shown that its continuance imperils the safety, and even the existence of the city. It would not be competent for the city authorities to cede away their right of control over these public works for a long period of time, and by express stipulation contract that neither they nor the courts should have the right to put an end to the lease, even though the lessee should fail to perform the public duties assumed by him. No pecuniary damages could compensate for the loss that might ensue from a single day's failure to perform those duties; and if the contract before us be given such a construction as would forbid relief, it would be clearly *ultra vires* the authority of the City Council. It is only by holding that the city has the right, under the facts shown here, to invoke the jurisdiction of the Chancery Court to put an end to the lease, that the contract can be held ever to have had any validity. It is insisted by counsel for the city that the contract was

invalid in its inception, because of a failure to stipulate that it should be revocable at the pleasure of the city authorities; the argument being that it was incompetent for the latter to abdicate, for themselves and their successors in office, that control over the water-works which was vested in them for the public good. We are not disposed to adopt this view. The mayor and aldermen were by the city charter authorized "to provide the city with water for the use of the fire department or of the citizens, by water-works within or beyond the boundaries thereof." The authority being general, and there being no specification as to the manner of operating the works after their erection, we see no reason why it might not be as well done by contract as by hiring employees or electing a manager; and while it would have been the part of wisdom to have stipulated for a removal of the contractor for cause by the city government, we cannot say that the absence of such a provision rendered the contract null. In such case, however, there must reside somewhere a power on behalf of the corporation, which is a constituent portion of the State, to put an end to a contract wholly unfulfilled by the contractor, under circumstances which render such failure eminently dangerous to the safety, the health, and the continued existence of the city. A construction that would deny the power of interference to the courts would render the contract void as being in excess of authority on the part of the city officials.

Decree affirmed.