[No. 673. August 5, 1897.]

EARLY TIMES DISTILLERY COMPANY et al., Appellants, v. CHARLES ZEIGER et al., Appellees.

FRAUDULENT CONVEYANCE—BILL IN EQUITY BY GENERAL CREDITORS TO SET ASIDE—JURISDICTION.—If the remedy at law is not plain, adequate and complete, or if the creditor has a trust in his favor, in either case, he is not required to go first into a court of law, but may apply in the first instance to a court of equity for relief.

ID.—CONSTITUTIONAL LAW—JURY TRIAL.—The constitutional right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction. Burton v. Barber, 104 U. S. 104.

*Appeal*, from a decree of the Second Judicial District Court, Bernalillo County, sustaining a demurrer to the bill. Reversed and remanded, with directions.

The facts are stated in the opinion of the court.

NEILL B. FIELD, B. S. RODEY and F. W. CLANCY for appellant.

It is not necessary that a creditor shall have reduced his claim to a judgment before he can maintain a bill under the statute of 1889.    Griffith v. Cox, 79 Ky. 564; In re Klein, 14 Fed. Cas. 718; Barton v. Barbour, 104 U. S. 133; Shields v. Thomas, 18 How. 261, 262; Ward v. Farwell, 97 Ill. 611; Gormley v. Clark, 134 U. S. 346; Innes v. Lansing, 7 Paige Chy. 585.

A. B. McMILLEN and CHILDERS & DOBSON for appellees.

The complainants are not judgment creditors, and, therefore, have no standing in a court of equity to contest the right of their alleged debtor to dispose of his property as he may see fit.    11 Freem. on Executions, sec. 430; Talbot v. Randall, 3 N. M. 226; Taylor v. Bowker, 111 U. S. 110; Putney v. Whitmire, 66 Fed. Rep. 110; Scott v. Neely, 140 U. S. 106; Nat. Tube Works Co. v. Ballou, 146 Id. 517; Cates v. Allen, 149 Id. 451; Hollins v. Coal Co., 150 Id. 371.

To warrant the relief prayed for, the complainants must establish the fact that they were creditors of the defendant, Zeiger, at the time of the alleged fraudulent conveyance. But, to allow them to prove that fact in a chancery proceeding, would violate the seventh amendment to the constitution of the United States, and deprive defendants of their right to a trial by jury.    Scott v. Allen, 140 U. S. 106; Cates v. Allen, 149 Id. 451; Putney v. Whitmire, 66 Fed. Rep. 517; Coal Co. v. Snowden, 42 Pa. St. 488; 82 Am. Dec. 530.    See, also, Walker v. Sauvinet, 92 U. S. 9; Edwards v. Elliott, 21 Wall. 332; Pearson v. Yewdall, 95 U. S. 294; Bump on Bankruptcy, 209, and citations; 1 Kent Com. 388; 1 Cooley's Const. Lim. Note; 2 Black. 477; State v. Bridge Co., 13 How. 563; Parsons v. Bedford, 3 Pet. (U. S.) 447; Land Co. v. Bradbury, 132

U. S. 509; Bump on Banks, 2245; In re Norris, 18 Fed. Cas. 317; In re Print. & Pub. Co., 18 Id. 780; Ins. Co. v. Comstock, 16 Wall. 259; Cooley's Const. Lim. 506.

Reply of appellants.

To argument of appellees by which they sought to show "that it would be inexcusable to contend that the right of trial by jury was not allowed in bankruptcy proceedings," under the early English statutes on the subject, appellants citing: 34 Hen. VIII., C. 4; 13 Eliz. C. 7; 1 Jas. C. 15; 21 Jas. C. 19; 5 Geo. II., C. 30; 49 Geo. III., C. 121; also Bill v. Beckwith, 3 Fed. Cas. 376; Goodenow v. Milliken, 10 Fed. Cas. 591.

HAMILTON, J.—This is an appeal from the district court of the Second judicial district for the county of Bernalillo. The complainants filed their bill on the chancery side of the court as general creditors of the defendant Zeiger, attacking a fraudulent conveyance alleged to have been made by the defendant and asked for a decree declaring the conveyance for the benefit of all the creditors under the statute. To this bill a demurrer was filed by the defendant Zeiger, based upon the ground that a court of equity had no jurisdiction to entertain a bill of this character. This demurrer was sustained, from which ruling of the court in sustaining the demurrer the defendants appealed.

It will be seen by the record in this case that the sole ground of attack made upon this bill is that the complainants are but simply general and not judgment creditors; that a general creditor will not be heard in a court of equity to attack and set aside a fraudulent conveyance made by his debtor until he has first obtained a judgment, issued execution thereon and had it returned nulla bona; that by the provisions of the constitution of the United States the right of trial by jury is preserved in suits at common law when the amount in controversy exceeds $20, and that the act of the legislative assembly of the territory under which this bill is filed is violative of this

provision of the constitution, as it deprives the party of his right of trial by jury, and is, to that extent, void.

Stated as a general proposition, there can be no doubt that the well settled rule is, that if the creditor has a legal remedy, which is plain, adequate and complete, he must exhaust that remedy before he will be allowed admission into a court of equity. He should proceed upon the law side of the court, obtain his judgment, and have execution returned thereon unsatisfied, as a condition precedent to enable **BILL to set aside fraudulent conveyance: jurisdiction.** him to attack by a bill in chancery the fraudulent conveyance of his debtor. While this position is true, it is also well settled by a line of authorities equally convincing and controlling, that if the remedy at law is not plain, adequate and complete, or if the creditor has a trust in his favor, then in either event he is not required to go first into a court of law, but may apply in the first instance to a court of equity for relief. The fact that the remedy at law may have been exhausted, or that it is wholly inadequate and incomplete, may be, and is, clearly and conclusively shown by the judgment, execution and return of nulla bona. The judgment, execution and return are but the best evidence of these facts, but they are not the only method or the only evidence by which it may be shown, that the remedy at law is wholly inadequate and incomplete. If the bill upon its face contains such allegations of fact that the court is enabled to see that there is no remedy at common law, or that the remedy at law is wholly inadequate and incomplete, or if the allegations of the bill show that the creditor has or claims a trust in his favor, or is seeking to establish his claim as against the trust property, and that the relief can only be made available in a court of chancery, then upon such a case being made by the bill, the court will not require him in the first instance to hazard his chances of recovery by a useless expenditure of time in obtaining an empty judgment and fruitless execution as a condition precedent to entertaining his bill. This we understand to be the settled doctrine of the

Federal courts.   In Case v. Beauregard, 101 U. S. 688, the court in discussing this question, observes:

"When the debtor's estate is a mere equitable one, which can not be reached by any proceeding at law, there is no reason for requiring attempts to reach it by legal process.*   *   * It may be said that, whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies.   Indeed, in those cases in which it has been held that obtaining a judgment and issuing an execution is necessary before a court of equity can be asked to set aside fraudulent dispositions of a debtor's property the reason given is that a general creditor has no lien.   And when such bills have been sustained without a judgment at law, it has been to enable the creditor to obtain a lien, either by judgment or execution.   But when the bill asserts a lien or trust, and shows that it can be made available only by the aid of the chancellor, it obviously makes a case for his interference."

Also in the same book, page 1004, Co-operative Ed., Case v. N. O. & Carrollton R. R. Co., the court in discussing this question uses this language:

"But, after all, the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law.   They are not the only possible means of proof.   The necessity of resort to a court of equity may be made otherwise to appear.   Accordingly the rule, though general, is not without many exceptions.   Neither law nor equity requires a meaningless form, 'Bona sed impossibilia non cogit lex.'   It has been decided that where it appears by the bill that the debtor is insolvent and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference."

Also in the case of Consolidated Tank Line Company v. Kansas City Varnish Company, 45 Fed. Rep., page 16, was a bill by a general creditor to set aside an assignment upon the ground of fraud.   The same objection was made there as in

the case at bar, that the complainant was not a judgment creditor, and therefore could not maintain the suit. The contention was overruled and the bill sustained. Judge Phillips, on pages 16 and 17, says:

"Looking to the foundation upon which the rule contended for rests, it ought not to apply where the judgment and execution would be fruitless."

Also in the case of Talley v. Curtain, decided by the United States circuit court of appeals, 54 Fed. Rep., was also a bill by a general creditor to set aside an assignment upon the ground of fraud, and it was contended in that case that the complainant not having first obtained a judgment, could not come into a court of equity. This position contended for was overruled and the bill sustained.

The state of facts as disclosed by the allegations of this bill show that a judgment and execution at law would have availed the complainants nothing. They show that the remedy at law was not wholly inadequate and incomplete, but that there was no remedy at all. Under this state of facts, a court of equity is not justified in closing its doors, refusing to entertain jurisdiction of a case, and thus deprive the litigant of his only remedy to obtain redress.

As we have before stated, if the bill shows that a creditor has a trust in his favor, or if he is seeking to establish an interest in his favor in the property of the debtor, held in trust for his benefit, and is asking to have the distributive share to which he may be entitled paid to him out of that trust property or its proceeds, then it is clear that a proceeding at law could avail him nothing, and a court of equity is the only tribunal capable of rendering him this relief. In the case of Russell v. Clark's Executor, 7 Cranch, 87, Chief Justice Marshall lays down the rule:

"If a claim is to be satisfied out of a fund which is accessible only by the aid of a court of chancery, application may be made in the first instance to that court which would not require that the claim should be first established in a court of law."

Also in the case of Oelrichs v. Spain, 15 Wallace, 228, the court observes:

"Where the remedy at law is of this character (plain, adequate and complete), the party seeking redress must pursue it. In such cases the adverse party has a constitutional right to a trial of the issues of fact by a jury. But this principle has no application to the case before us. Upon looking into the record, it is clear to our minds, not only that the remedy at law would not be effectual as the remedy in equity, but we do not see that there is any effectual remedy at all at law. Besides there is an element of trust in the case which, whereever it exists, always confers jurisdiction in equity."

(See, also, Case v. N. O. & Carrollton R. R. Co., 101 U. S. supra.)

What is the case as made by this bill? It alleges in substance that the defendant Zeiger is indebted to the complainant, the Early Times Distillery Company, in the sum of $6,731.88, evidenced by acceptances; that he is also indebted to other complainants in various sums stated, evidenced by promissory notes. It further alleges that he was also indebted to the First National Bank of Albuquerque in the sum of $25,000; due really to the bank. It is also charged in the bill:

"Complainants state that the said deed of trust in the last paragraph mentioned was made by said defendant, Zeiger, and was an act and device done and resorted to by said Zeiger, in contemplation of insolvency, and with the design to prefer the said defendant, the First National Bank of Albuquerque, to the exclusion in part of these complainants and all other creditors of said Zeiger, and they further allege that the said deed of trust was not made in good faith to secure any debt or liability created simultaneously therewith, but for the use and benefit of the First National Bank of Albuquerque aforesaid, on account of the pre-existing indebtedness of said Zeiger never actually received from the said Lesguereaux the said sum of $15,000 in said deed of trust, on any part thereof."

The bill prays that a receiver be appointed to take charge of the property covered by the mortgage, and that it may be administered and distributed under the direction of the court, in accordance with the provision of the act, to all the creditors alike, and asks to have the deed of trust or mortgage decreed void.

The act of the legislature upon which this bill is filed provides in section 1, Acts of 1889:

"Every sale, mortgage or assignment made by debtors, and every judgment suffered by any defendant, or any act or device done or resorted to by a debtor in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion in the whole or in part of the others, shall operate as an assignment and transfer of all the property and effects of such debtor and shall inure to the benefit of all his creditors (except as hereinafter provided) in proportion to the amount of their respective demands, including those which are future and contingent, but nothing in this act shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if the same be lodged for record forthwith in the office of the county recorder where the property described therein shall be situated."

Section 2 of the act provides, that all such transfers as are decreed void are to inure to the benefit of all creditors generally, and are to be subject to the control of a court of equity upon the bill filed by any person interested, and that such suit must be brought within six months after such conveyance is lodged for record. Section 3 provides that a number of creditors may unite in filing of said bill.

Viewing this act of the legislature as a whole, it must be regarded as an insolvency or bankruptcy law. The clear intent and purpose of the act is to prevent an insolvent and failing debtor from making a fraudulent transfer of his property, and from giving a preference to one creditor. It is intended by this act to secure an equal distribution of all of the failing debtor's property between all the creditors. To accomplish

this end, a court of equity is vested by the express terms of the act with jurisdiction, at the instance of any creditor, to entertain a suit to set aside such transfers, to take hold of the property of the debtor so attempted to be conveyed, and administer it as a trust fund for the benefit of all the creditors. The act in express terms declares: "Such mortgage or assignment, etc., made in contemplation of insolvency with the design to prefer one creditor over another shall inure to the benefit of all the creditors alike."

Is there not, therefore, an element of trust in a suit brought under this statute such as a court of equity alone can enforce? By the act of the debtor in assigning or mortgaging his property, in violation of the provisions of this statute, does he not thereby, by his own act convert his property into a trust estate for the benefit of all the creditors alike; or, rather, it may be said, that when the insolvent debtor thus fraudulently conveys his property the statute then converts that property into a trust estate, a trust in which each creditor has an interest, and any creditor, within the time limited by the statute, may proceed in a court of equity to have the trust declared and the property taken charge of by the court and administered to all the creditors.

But it is contended that the defendant is entitled under the statute to have a court of law pass upon the question as to whether the debt is due from him to the complainant, and therefore a court of equity has no jurisdiction. The objection to this contention is, that it is not the existence or nonexistence of the debt claimed to be due to any particular creditor which gives the court of equity jurisdiction, but it is the act of the debtor in making the fraudulent conveyance and giving the preference which gives the equity jurisdiction. If the debtor is insolvent or in contemplation of insolvency and makes the conveyance giving preference, the trust is then created in behalf of all of the creditors, and any one or all of them may proceed to have the trust declared, and the property proportionately administered. The insolvency of the debtor, and the conveyance and fraudulent preference, are the essential things

to be investigated which give the equity jurisdiction. Though the court might determine that a particular claimant or set of claimants were not, in fact, creditors, yet the court having once acquired jurisdiction of the trust estate the failure of any creditor or creditors to establish his or their debt could not oust the jurisdiction, and the court would not abandon it but would proceed to administer and distribute the fund to such as show themselves valid creditors and entitled to the distribution. It may be said that the creditor has a remedy at law by attachment, based upon the fraudulent conveyance. This remedy may be available but it is neither adequate nor complete. Suppose the attachment creditor be successful in sustaining the attachment and setting aside the conveyance, what then becomes of the property? He can not apply it to the satisfaction of his attachment, because each creditor has an interest in the property as a trust estate and is entitled to his pro rata share. The court of equity is the only tribunal capable of effectually handling and administering such property. A court of law can have no concern with the administration of the estate of an insolvent under such a statute as this, as its complicated machinery is not adapted to the ends sought to be accomplished—of declaring and enforcing the trust on behalf of the creditors and administering and distributing the property thereunder.

It is urged with great earnestness that the act deprives the party of his constitutional right of trial by jury, and is therefore void. This argument proceeds upon the theory that the ascertainment of the debt due to the creditor is the only thing to be determined. The trust feature of the case which is always a subject of equity jurisdiction, is ignored. The right of trial by jury as an absolute right never extends to a case of equity jurisdiction. In the case of Burton v. Barber, 104 U. S. 133, it is said:

CONSTITUTIONAL law: jury trial.

"But those who use this argument lose sight of the fundamental principle that the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction.

If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity."

It may be, in this connection, suggested that as the allegations of the bill are admitted by the demurrer, there is no necessity for a jury to ascertain the liability of the defendant or the amount of his indebtedness to the complainant—and further if a judgment creditor by virtue of his lien acquires the right to proceed, in equity to enforce it against the debtor, and thus bestows the jurisdiction to administer the estate without the intervention of a jury, it would seem that the debtor is not damaged if a similar result should ensue from his recognition of the complainant's demand.

It is claimed by the appellees that the case of Scott v. Neely, 140 U. S. —, and the case of Carter v. Allen, 149 U. S., are controlling upon us in the determination of the question now before us. These cases both arose under a statute of Mississippi, which provides as follows:

"The courts shall have jurisdiction of bills exhibited by creditors who have not obtained judgments at law, or, having judgments, have not had executions returned unsatisfied, to set aside fraudulent conveyances of property or other devices resorted to for the purpose of hindering, delaying or defrauding creditors and may subject the property to the satisfaction of the demands of such creditors, as if the complainant had a judgment and execution thereon returned, 'no property found.' "

An examination of the statute shows that it bears little or no resemblance to the statute under consideration. By this act the legislature of Mississippi attempted by statute to vest the court with the power to declare a conveyance fraudulent and decree a lien upon and give preference to a particular creditor to the exclusion of all other creditors. It thus attempted by statute to vest a court with power to do what it said the debtor could not do; that is, take the property of the insolvent debtor from one creditor and give it to another. There is no element of trust in this statute. There is no provi-

sion that in case of a fraudulent preference by an insolvent
debtor a court of equity, at the instance of a creditor, might
take charge of all the assets of a debtor, declare the conveyance
fraudulent, and administer the property for the benefit of all
the creditors.

In the case of Talley v. Curtain, supra, the circuit court
of appeals had under consideration a case of the same character
as the one at bar, and it was contended in that case that the
case of Scott v. Neely was decisive of the question. The cir-
cuit court of appeals, in discussing the case of Scott v. Neely,
say:

"Scott v. Neely held that the Mississippi statute could not
create or confer such a jurisdiction on a court of equity of the
United States, and that a court of equity of the United States
could not entertain such a suit, because, upon a demand like
this, the adverse party had the right under the constitution, to
his trial by jury. There was no trust. The claim of com-
plainants was strictly on the money demand, the larger por-
tion not liquidated, consisting of an account of advances,
interests, credits, and charges. No part of the debt was ad-
mitted. It had to be established and proved after opposition
and litigation. The contract itself must have been proved.
There was nothing to show why the remedy at law was not
plain, adequate and complete. The complainants had first to
prove their case, then to set aside the deed; and they claimed
that they could enter judgment and secure the first lien. The
complainants had no lien on or interest in the property. The
main issue in the case was whether the courts of the United
States could and would enforce the state statute. It seems to
be admitted on all sides that without such a statute the court
had no jurisdiction. * * * But this denial can not
defeat the trusts, if any exist, nor affect creditors who have
come in under this creditors' bill, nor defeat the jurisdiction,
which does not depend upon the attitude of the complainants.
The aid of the court has been sought to construe a trust. Hav-
ing jurisdiction to do this—its peculiar province—it can go

on, and give such relief as it may think proper upon the whole
case."

On page 48, the court continuing, also says:

"If, then, the case comes within the normal jurisdiction
of a court of equity of the United States, either because it
deals with trusts and equitable assets, or because complainants
have no plain, adequate and complete remedy at law, we
escape the provision of the constitution relied on. This pro-
vision, correctly interpreted, can not be made to embrace the
established exclusive jurisdiction of courts of equity, nor that
which they have exercised as concurrent with courts of law;
but it should be understood as limited to rights and remedies
peculiarly legal in their nature, and such as it was proper to
assert in courts of law, and by the appropriate modes and pro-
ceedings of courts of law."

See, also, Shields v. Thomas, 18 How. (U. S.) 262.

The case of Peters v. Bain, 133 U. S. 670, was also a case
involving the same principle as the one which we are now
discussing. The bill was sustained in the circuit court of
the United States, in the opinion rendered by Chief Justice
Waite; an appeal was taken to the supreme court of the
United States, and neither the circuit court nor the supreme
court made any question as to the equity jurisdiction of the
court.

By a reference to the case of Talley v. Curtain, United
States circuit court of appeals, it will be seen that that court
reviewed the case of Scott v. Neely, and held that the principle
as there announced under the statute of Mississippi could not
be made to apply to a statute involving a general assignment
for the benefit of all creditors. A fraudulent conveyance
made by a failing debtor in violation of the statute operates
as a general assignment of the property for the benefit of all
creditors, and the same rule will apply. I do not regard
therefore, the cases of Carter v. Allen and Scott v. Neely, as
authority for construing our statutes. See, also, the case
of Consolidated Tank Line Company v. Kansas City, supra,

45 Fed. Rep. 16, which is a case under a Missouri statute similar to ours.

If the contention contended for the appellees is to be adopted, that a creditor must resort to the law side of the court, and obtain his judgment and execution before he can attack the fraudulent conveyance of his debtor, then the statute would fail of its object, as the suit must be brought to set aside the conveyance within six months, and if the defendant contests the claim this time would always lapse before the creditor could get his judgment and execution, and the door would be closed against his right to attack the fraudulent conveyance. The language of the supreme court of Kentucky in construing this statute in the case of Griffith v. Cox, 79 Ky. 564, is, we think, applicable here:

"* * * Courts of equity are expressly given jurisdiction and control of such transfers upon the filing of a petition by any person interested within six months after the mortgage or transfer. Any person or persons interested, no matter whether their interest be manifested by judgments or otherwise, may unite in the petition.

"As the petition must be filed within six months after the the mortgage or transfer shall have been lodged for record or the delivery of the property or effects transferred, to require a judgment and return of no property found before the petition shall be filed would render the statute almost useless, and defeat many creditors by the delays which could be resorted to by debtors to prevent such judgments and returns before the expiration of six months."

The object of the statute under consideration is to prevent an insolvent debtor from making a fraudulent conveyance and transfer of his property and from giving a fraudulent preference to one creditor to the exclusion of others. It is to secure an equal and fair distribution of all his assets to all the creditors alike. The case as made by the bill seeks to secure this end, and contains an element of trust in favor of the complainants and all other creditors and shows the remedy at law to be wholly inadequate and incomplete. . It therefore furnishes the

strongest ground for exclusive equity jurisdiction in the first instance, without resort to the judgment and execution at law. The case is not one, therefore, where the party has the right to demand a jury trial.

The cause is reversed and remanded, with directions to the court below to overrule the demurrer and allow the cause to proceed.

Smith, C. J., Laughlin, J., and Bantz, A. J., concurring.