WILLIAM H. REXFORD AND HARRIET N. REXFORD v. WILLIAM E. SCHOFIELD.

*Deed—Consideration—Life support—Bill to rescind.*

1. Children who contract for the care, ease, comfort, and convenience of aged parents, with the full knowledge of their infirmities, cannot be heard to plead those infirmities as an excuse for a failure to carry out the contract, especially where the evidence of bad faith and overreaching on the part of the children is abundant.

2. Complainants filed a bill to set aside a deed of their farm to their grandson, made in consideration of his agreement to provide for them a comfortable life support, to insure his life in a given sum for their use and benefit, and to assume a certain obligation of the grandfather for $100, and any accrued interest, in favor of his daughter. Complainants were old and feeble, and the defendant made false representations to them as to his financial ability to perform his contract. He sent his father and mother and sister, who were dependent upon him, to live on the farm, with a view of his relief from their support, rather than with reference to any benefit his grandparents should receive from their presence. His father, who had been intemperate in his habits, and who had reformed, soon demonstrated that his reformation was not permanent, and not only proved to be a nuisance about the farm, but abused complainants. And a decree setting aside said deed is affirmed.

Appeal from Jackson. (Peck, J.) Submitted on briefs June 28, 1894. Decided July 10, 1894.

Bill to set aside a deed. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*Wilson & Cobb,* for complainants.

*Barkworth & Blair,* for defendant.

McGRATH, C. J. This bill is filed to set aside a conveyance made in April, 1891, by complainants to their grandson, the defendant, in consideration of his agreement—

" To provide every comfort and convenience essential to the decencies and necessaries of life of both William H. Rexford and Harriet N. Rexford so long as they may live; * * * to insure his life for the use and benefit of said second parties, for the sum of $1,000, in one of the best insurance companies in America; * * * and to assume a certain obligation of William H. Rexford in favor of Mrs. A. R. Tibbitts [a daughter] for the sum of $100, together with any accrued interest thereon."

101 MICH.—31.

It is clear that complainants were old and feeble, that they relied implicitly upon defendant, and that they were induced to convey by defendant's repeated declarations of his anxiety to relieve them from the burden of the care of the farm and provide for their comfort, and his representations as to his financial ability. He resided in Chicago, and was engaged in a general brokerage business there, living with his father, mother, and sister. His mother had turned over to him a few hundred dollars,— all that the family possessed,—which he had invested in office furniture, and had undertaken the support of the family. In a letter written by defendant to his grandmother December 7, 1890, he had represented that himself and partner had made nearly $1,000 in cash, during the 10 days preceding the 1st of December, in commissions; that he was then in Indianapolis "to arrange the last preliminary previous to a culminating point in our electric light company. This one enterprise has over $50,000 in store for me." This follows this inquiry:

"Grandma, could you rest contented in a place of the size of Chicago, if you had a handsome little home in a pretty suburban park, with every possible convenience? Why I ask is this: that I have been offered a splendid place in Auburn Park by Dr. Lathrop, on easy terms, for $6,500. The house alone cost $4,000 for building. The finish is in hardwood throughout,—rich mantels, gas, bath, furnace, etc.,—and I have almost decided to buy same. If I thought you and grandpa would come and make your home with us, it would be an additional incentive for me to do so. Besides, it is not going to be long before I will have more money than I will know how to use, it is feared."

On December 11, 1890, the daughter, then with the old people, wrote to defendant, suggesting that complainants were getting old and feeble, and unable to operate the farm; that she was about to leave them; that she thought

they could be induced to leave the farm; and suggesting that he make a proposition to them, involving their care and comfort in the future. On December 14, 1890, the grandmother wrote to defendant as follows:

"I have felt for some time like I did not know what would be best for us to do, as Alta cannot stay longer with us, and besides there is a good deal of hard work on the farm, and she, of course, would earn a good deal more for herself than we could give her to stay, and we have to make some kind of arrangements soon now, so she may know what to depend upon. I would not wish to be kept at your expense, but want arrangements made so you would be sure of receiving a reasonable remuneration for caring for us, and would want the property we have to last as long as we both live, and give us a decent burial. I feel like I could accept of your kind offer, and I don't doubt but father, too, for he can't do much, and it is a great effort for him to do anything; and, since I can't work, I feel weaned from the farm, and am willing to leave it. We want to know your terms, and please write. I wish you could be here, and talk with us, and then we could come to some kind of an understanding as to what we should do."

Other correspondence followed, but no proposition was made or discussed. In April, 1891, defendant visited the old people, and brought with him, and exhibited to them, certificates of stock in various enterprises, and a policy of insurance upon the life of his partner, informing the old people that these papers represented vast wealth. The execution of the deed and contract resulted. Nothing appears to have been said about their removing to Chicago. Complainants were desirous of making provision for the payment of $200 to each of five children of complainants, and defendant suggested the insurance policy upon his own life. He returned to Chicago, and sent them a policy for $1,000, payable, in case his grandparents should survive him, to them; otherwise, to his mother. The receipt of this policy aroused the suspicion of the old people, and

they wrote him, complaining. Then follow several letters from him, deploring the seeming loss of confidence in him, reiterating his assurances of good faith and his affection, and his extravagant assertions respecting his earnings and financial ability, and promising further provisions for their ease and pleasure. In the meantime he had sent his father, mother, and sister to the farm. Evidently, this course had been suggested by defendant, he assuring the old people that his father, who had been intemperate in his habits, and a good-for-nothing generally, had reformed, and would manage the farm, and relieve the old people from all care. The father, mother, and daughter came. The mother and daughter seemed to regard the change as having been made for their comfort and ease, rather than for the benefit of the old people. The defendant's father soon demonstrated that his reformation was not permanent, and not only proved to be a nuisance about the farm, but abused the complainants. Thus, the old people, instead of being relieved from work and care, were further burdened with these surroundings, and were at the same time given to understand that the rights of the new-comers were paramount. Complaints were made to defendant, who came on from Chicago, when it was suggested to him that the papers be canceled; but he left, after having informed complainants that he had given his people a good talking to, and urged complainants to bear with them a little longer. The same trouble continued, and complainants afterwards filed this bill.

It clearly appears from this record that the only available assets that defendant was possessed of, at the time the deed and contract were made, were the furniture with which the flat in which defendant and his parents lived was supplied, and his interest in his own office furniture. It is also clear from this record that at that time defendant's family were dependent upon him, and that the farm

was selected as a place for them, and with a view of his relief from their support, rather than with reference to any benefit that complainants should receive from their presence.

It is urged that the father, mother, and daughter could not get along with complainants, because of their idiosyncrasies; but these were well known, and children who contract for the care, ease, comfort, and convenience of aged parents, with the full knowledge of their infirmities, cannot be heard to plead those infirmities as an excuse for a failure to carry out the contract, especially upon a record which ·so abounds with evidences of bad faith and. overreaching as does this record.

The decree is affirmed, with costs to complainants.

The other Justices concurred.