# CHARLESTON.

Henry Marcum v. Polly Marcum, et als.

Submitted October 16, 1923.   Decided November 6, 1923.

1.  Deeds—*Grantor in Deed in Consideration of Support Cannot Rescind at Death of Grantees, But Equity Will Administer Property.*

   Where father conveys his land to his two sons in consideration of their agreement to support and maintain him during his life, and after the grantees have supported him for some time, pursuant to the conveyance, they die, each leaving a widow and infant children, equity will not, at the suit of the grantor, rescind the conveyance, but will administer the property for the benefit of all parties, rendering to the grantor his reasonable maintenance out of the income from or corpus of the estate, and preserving for the widows and children all that remains at the time of his death, in such proportions as they are legally entitled to.  (p. 690).

2.  Same—*Where Grantees in Deed in Consideration of Support Die, Land May be Leased or Sold for Maintenance of Grantor.*

   In such case the court may direct that the land, or so much thereof as may be required for the grantor's support during his life, be leased or sold, and for that purpose may apply either the income or the proceeds of sale, or such part thereof as may be necessary, to the maintenance of the grantor, in a manner suitable to his station in life.  (p. 690).

Appeal from Circuit Court, Mingo County.

Suit by Henry Marcum against Polly Marcum and others. From a decree for plaintiff, defendants appeal.

*Reversed and remanded.*

*Stafford & Rhodes,* for appellants.
*James Damron,* for appellee.

Meredith, Judge:

This is an appeal from a decree of the circuit court of Mingo county setting aside a deed made by Henry Marcum to his two sons, James and John B. Marcum, dated June 27th, 1919.  The deed recites a consideration of $3,000.00

paid, "and the further consideration that the parties of the second part *is* to *cear* and *montain the* the said Henry Marcum during his *natial* life;" and purports to convey with general warranty two tracts aggregating 445 acres. It is shown by the evidence of the scrivener that the cash consideration was not paid nor was it intended to be paid. Suit was brought to set aside the deed because of the failure of the grantees to furnish the required support. The court granted the prayer of the bill.

Defendants urged two grounds of error:

First: That the deed was made to hinder, delay and defraud the grantor's creditors, hence he is entitled to no relief.

Second: That assuming the grantor is entitled to support from the property, he cannot have the deed set aside because there was no default of the original grantees, they having partly performed their contract and died, leaving the property to their widows and infant children, who would have completed performance had the plaintiff permitted them to do so; that had the widows refused performance it was the duty of the court to treat the land as a trust estate and through a receiver, or other officer, rent or sell it, using a sufficient amount of the proceeds to support the grantor during his life and distributing the remainder upon his death among the grantees' heirs and the two widows according to their respective interests.

It appears that Henry Marcum was about seventy years of age; he was handicapped by the loss of an arm and an eye; was ignorant and not of a very pleasant disposition. He and his wife, Verlina, owned together, and undivided, two tracts of land aggregating about 415 acres, upon which they had lived for many years. He owned a store located on the land, which was conducted by his wife. They had had twelve children, three of whom were deceased. One or more had married and moved away from the neighborhood. James and John B., the grantees, were married and lived nearby in separate homes, probably on this land. Some of the children were infants and lived with their parents. In June, 1919, Verlina Marcum, wife of plaintiff, left home, taking the in-

fant children, and went to Portsmouth, Ohio, where she has lived ever since. According to the testimony of the plaintiff, she stripped the store of about everything in it and took part, if not quite all, of the household furniture. There being no one to care for plaintiff, he proposed to his two sons. James and John B., or they proposed to him (but who made the proposal is immaterial), that the father should convey to the two sons his land, in consideration of a lifetime support from them. Thereupon the deed was made. It will be observed that it covers the whole of the 445 acres, ascertained to be 415 acres, while the father had but a half interest therein. Immediately thereafter James, with his wife and children, moved into the home which had been occupied by the father, where they continued to reside until the son James was killed in June, 1920. Shortly thereafter the son John B., with his wife and children, undertook the care of the father, and continued to furnish him a home until the following December, a period of about six months, when the son John B. was killed.

There is no doubt but that the father and the two sons got along well together and plaintiff was satisfied with his treatment, but after the death of the second son troubles arose. Plaintiff and the wife of John B. Marcum could not get along together. Each one states it was the other's fault, but the wife of James Marcum and the wife of John B. Marcum both say that they would have been willing to care for the father had he treated them right. However, they both testify that owing to his conduct they could not remain in the same home and care for him.

It appears that James Marcum had built a store after he moved into the father's home and conducted a store there up to the time of his death; that he had a 40 acre tract of land of his own, and was employed by the Norfolk & Western Railway Company at $90.00 per month. John B. Marcum was also employed. The father, during the life of the two sons, worked upon the land and each helped the other. So there can be little controversy as to whether the sons during life carried out their portion of the contract, and there is no doubt that since the death of John B. Marcum the father

has been compelled to support himself on the farm. It appears that after the widow of John B. Marcum left, the plaintiff's daughter and one or two of his other children came back to the old home where they have since been living.

The defendants contend that the deed was made to defraud the grantor's creditors. It is shown that at the time the deed was made plaintiff had scarcely any other property, certainly not more than $200.00 worth. At that time he owed debts aggregating from $500.00 to $750.00; debts that were contracted through the store, all of which, however, have since the deed was executed been paid by the grantor. But plaintiff was fearful that his wife, before she left him, had contracted debts to a considerable amount over and above the sums proved. He claimed that she had bought some furniture, had it charged to him, had it shipped to a party at Williamson in the name of "Brown," where she obtained it and took it with her to Portsmouth. He was also afraid that she would contract debts for which he would be liable. There is evidence in the record to the effect that he made various statements to disinterested persons that his object in making the deed was to avoid paying these debts. But as the circuit court has found for the plaintiff upon the issue as to his fraudulent intent, we find it unnecessary to state whether such fraudulent intent has been proved, in view of our disposition of the case. He is an old man, having only a few years to live at most, and under the peculiar circumstances of this case we think that justice can be done to all parties. It appears that after his wife left him a divorce suit was instituted, either by him or her, and that the plaintiff was awarded a decree of divorce; also that a partition suit was instituted and the land was divided between the plaintiff and his wife, the plaintiff receiving approximately 200 acres; so that there is now in controversy that portion of the land which was laid off to the plaintiff in that partition suit.

As already stated, the grantees in the deed partially performed their part of the contract for a period of at least eighteen months. Each left surviving a widow and infant children. Upon their death the title to the land passed by

descent to their heirs, subject to plaintiff's right to maintenance and to the right of dower of the widows. The conveyance is a grant of the land; it contains no condition subsequent. Upon failure of the grantees named therein to support the grantor there is no provision made in the deed for a forfeiture of the estate. Of course, if the grantees had refused to support the grantor, he would have had a right to rescind. *Lowman* v. *Crawford,* 99 Va. 688, 40 S. E. 17; *White* v. *Bailey,* 65 W. Va. 573, 64 S. E. 1019. At the death of the grantees, however, all that remains is the grantor's right to charge the land for a lifetime support. Under the terms of the deed, the widows and grantees' children are not required to support the grantor. The children and the widows are probably not in position to support the grantor unless they are allowed to live upon the land; they have not sufficient property other than the land itself out of which to furnish him support. The original grantees never were in default. The circumstances here are somewhat unusual. The deed makes no provision for the event of the grantees' death before the complete performance of the contract.

Plaintiff is in a court of equity. He is entitled to the full measure of support provided for in the deed, but under the circumstances he is not entitled to a rescission of the contract and to an entire restoration of the property. We think that a court of equity should find some means of taking charge of this property and administering the estate as a trust for the benefit of the grantor during his life, the residue of the property to be distributed or divided among the children of the two sons and their widows as their interests may appear at the time of the grantor's death. The grantor has a first charge upon the land, his right to support is above all other claims. The record shows that if he lives upon the land he can be supported at a cost of from $150.00 to $250.00 per year. As time goes on it may cost more, but he is entitled to a reasonable support suitable to his circumstances and condition in life. Whether the land will rent for sufficient or not to furnish this support does not appear. It is shown that the land, valuable chiefly for its coal and

timber and prospective oil and gas rights, is worth at least $20,000.00. We are of opinion that it is the duty of the court to ascertain the rental value of the land and if it will rent for sufficient to provide the grantor's support and pay the taxes thereon, the land ought to be leased for that purpose; that the court should also ascertain what would be a reasonable sum required for his support annually and if the land cannot be leased for a sum sufficient to support him, then the court should sell it or such part thereof as it may deem reasonable for the purpose, and direct that a sufficient sum of the income, or of the corpus of the estate if necessary, be used to provide his support and maintenance until his death; the proceeds to be preserved and protected under the decree of the court so that if there be anything left at the time of his death it may be divided among those entitled thereto. If the plaintiff desires such relief as herein indicated, it will be necessary for him to amend his bill. This case is in many respects similar to the case of *Keister* v. *Cubine,* 101 Va. 768, 45 S. E. 285. See also *Abbott* v. *Sanders,* 80 Vt. 179, 12 Am. and Eng. Ann. Cas. 898, and notes thereto.

For the foregoing reasons the decree will be reversed and the cause remanded for further proceedings to be had therein in accordance with the principles herein announced.

*Reversed and remanded.*