81 P.2d 707

VAN SICKLE v. KECK et al.

No. 4359.

Supreme Court of New Mexico.

July 15, 1938.

J. B. Newell and Edwin Mechem, both of Las Cruces, for appellant.

E. E. Young, of Roswell, for appellees.

BRICE, Justice.

The appellant sued the appellees for an interest in, and to impress an equitable lien against, certain real estate situated in Lincoln County, New Mexico.

The appellant will be styled plaintiff; the defendant Keck, defendant, and the other defendants styled defendant Woolard and defendant Franklin, respectively.

Plaintiff alleged in substance that in 1931 he entered into an oral agreement with the defendant and his wife, by the terms of which he was to furnish labor, material and money, sufficient to build a house for defendant on certain lots described; in consideration for which the defendant and wife agreed to board him for life, and upon his death provide for him a suitable burial. That pursuant to this contract the plaintiff did furnish the labor and material with which to build the house in question, of the value of $3550.41.

That plaintiff boarded with defendant and wife until the latter's wife died, which occurred in the latter part of September, 1935; after which defendant failed and refused to longer carry out the contract. That the board furnished plaintiff was of the value of $1607, and that the balance due him was $1943.41; being the difference between the said sum of $1607 and the amount furnished by plaintiff for the purpose stated. It was alleged that the defendant has no other property subject to execution and that plaintiff has no adequate remedy at law.

The tenth paragraph of the complaint is as follows: "That by reason of the premises above stated this plaintiff is entitled to an interest in said property in the sum of $1,943.41; or such sum as the Court may find remains after allowing a reasonable sum for board during the period of time that plaintiff boarded with the said Kecks."

The prayer is "That plaintiff's interest in and to said property be ascertained and adjudicated and a lien established against the same."

There were certain transfers of the property in suit in which defendants Keck, Woolard and Franklin were parties, which it is alleged were fraudulent, and for the cancellation of which, the plaintiff prayed.

At the close of appellant's testimony appellees moved for dismissal. The motion was sustained and judgment entered dismissing appellant's bill. From the judgment of dismissal this appeal was prosecuted.

The motion to dismiss called for a declaration of law, the effect of which is: considering plaintiff's testimony only, and in a light most favorable to him, together with all reasonable inferences that can be deduced therefrom, has he proved a case that will support a decree? Considering the evidence under this rule we find the following facts:

The plaintiff was a carpenter and builder, and went to Ruidoso in Lincoln County about 1926. The defendant moved there in April, 1929. Plaintiff boarded with defendant for some time and they became friends. Plaintiff advanced money to the defendant with which to buy a lot, and on this lot plaintiff built for the defendant a house for residential and business purposes, at a total cost to plaintiff of $3564.81. After the house was built, an agreement between the two was entered into whereby in consideration of the money so advanced by plaintiff, the defendant agreed to board plaintiff for the remainder of his life and give him a decent burial at his death. In pursuance of this agreement, plaintiff boarded with defendant and his wife until the latter's death on the 13th day of September, 1935, a period of 1628 days, the value of which was $1628. The defendant thereafter was unable to carry out his agreement further.

The plaintiff assumes the measure of damages to be the difference between the value of the board furnished and the original debt, or $1943.41. This seems not to have been contested.

454

On the day after this suit was brought defendant conveyed the property in question to the defendant Franklin, and a short time thereafter Franklin conveyed it to defendant Woolard. The defendants Franklin and Woolard knew of the pendency and purpose of this suit at the time of these transfers; and the evidence would warrant the inference that the two transfers were made with the intent and purpose of defrauding the plaintiff out of the debt which it was agreed was due him, and that the defendants Franklin and Woolard had full knowledge of that intent.

The agreement for plaintiff's support and burial was apparently not thought of until after the house was completed. He advanced funds to buy the lot and build the house, and when this was accomplished defendant owed the plaintiff $3564.81.

As we understand plaintiff's argument, it is that he is entitled to an equitable lien against the real property in question, to secure him for the balance of the original debt, after deducting the value of his board for 1628 days at $1 per day; presumptively because he advanced the money to buy the lot and to build the house thereon.

■ There was no agreement in writing, or otherwise, that plaintiff should have a lien or mortgage on the property to secure his debt. An equitable lien in his favor did not arise from the fact that plaintiff furnished the money to buy the lot (Perry v. Neel, 126 Neb. 106, 252 N.W. 812) and erect the building thereon. Thorbahn v. Walker's Estate, 269 Mich. 586, 257 N. W. 892.

■ A court of equity will not relieve an individual from the operation of the statute of frauds, which requires that interest in lands be created by an instrument of writing, and impose an equitable lien upon the land in favor of one who makes improvements thereon knowing that the title is in another; but will leave the parties to the remedies, if any, that a court of law provides. Washington Market Co. v. District of Columbia, 172 U.S. 361, 19 S.Ct. 218, 43 L.Ed. 478; Spencer v. Williams, 113 W.Va. 687, 170 S.E. 179, 89 A.L.R. 1451; Perry v. Neel, supra; Thorbahn v. Walker's Estate, supra.

■ The amount due plaintiff was computed by deducting from the original debt the value of board furnished the plaintiff for 1628 days at a value of $1 per day. The parties seem to have agreed to this measure of damages; and for the purposes of this suit we will assume the amount is correct. But the correct measure of damages is a sum of money which, invested in safe securities, would produce a monthly income sufficient to board plaintiff during his life (in this case $30 per month), leaving only enough at his death to decently bury him. Freeman v. Fogg, 82 Me. 408, 19 A. 907; Staiar's Adm'r v. Netter, 198 Ky. 788, 250 S.W. 89; Shover et al. v. Myrick, 4 Ind.App. 7, 30 N.E. 207; Baughan v. Baughan, 122 Ind. 115, 23 N.E. 695; Chesapeake & O. Ry. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117,

L.R.A.1917F, 367. In arriving at the amount of damages, recognized mortality tables may be introduced in evidence to be considered by the jury with other competent evidence to establish the probable length of plaintiff's life, as a basis for proving the time for which the defendant was paid to furnish board to plaintiff. Staiar's Adm'r v. Netter, supra; Morrison v. Atee, 23 Or. 530, 32 P. 400; Shover et al. v. Myrick, supra; Vicksburg & Meridian Ry. Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257.

■ Plaintiff cites cases in which deeds to land, given by aged persons in consideration of support for the remainder of the grantor's life, had been cancelled, or in which equitable liens had been impressed on such lands where the contracts had been breached. Contracts by which aged persons transfer all, or the major portion of their property in consideration of an agreement on the part of the grantee to support the grantor during the remainder of his life, are in a class by themselves, and are governed by different rules, or at least by different presumptions, than those governing other like contracts. Anderson v. Reed, 20 N.M. 202, 148 P. 502, L.R.A.1916B, 862.

But this is not a case of that class. It was not alleged or proved that plaintiff was an aged person; or that the consideration paid was any considerable portion of his property; or that he was induced by false promises to enter into the contract; or that defendant was guilty of any fraud in connection with the making or execution of the contract; or that any fiduciary relation existed between the parties. On the contrary it appears that the defendant and the plaintiff were not related; that plaintiff himself proposed to furnish the money to buy the lot and build the house; that after it was built he proposed to cancel defendant's obligation to him if defendant would board him and give him a suitable burial at his death; inferentially, that plaintiff knew defendant and his wife were without means; that defendant did not carry out the contract because of his physical, mental and financial condition, and for no other reason. Plaintiff lived in his own house and defendant's obligation was limited to furnishing to him his meals. He is a carpenter and builder. He owns a hardware store and the house it occupies, and several cottages in Ruidoso which he rents. Apparently he is a man of considerable means and income. He offered to give the debt sued on to Mrs. Keck's nieces if defendant would sell the property and pay them the amount of the debt from the proceeds of such sale. He was not entitled to the personal care and attention contemplated by contracts like that construed in Anderson v. Reed, supra, in which we said (page 505): "But the courts of this country, with but few exceptions, treat contracts by a grantee to furnish a home for and support to a grantor, when constituting the consideration for a conveyance by the grantor of the whole or major portion of his property, as being in a class by themselves, which are not governed by the ordinary rules which apply in the construction of contracts. * *

The value of the services, care, and attention contracted for cannot be measured in money. In this case, while others might have administered to the necessities of the grantor, in caring for and nursing him, they could not give to him that which he understood he was contracting for, viz., the care and nursing by one upon whom, if the witnesses are to be believed, he bestowed his love and affection and believed that he was receiving in return, and would continue to receive, daily evidences of similar devotion and affection, the loss of which, and her ministrations to his wants, could not be supplied by others, or its loss measured in money, as stated. Such a consideration as the above is not regarded as an ordinary obligation, but is of a peculiar character, imposing upon the grantee burdens which must be performed, if he would retain the benefits of the contract. Courts of equity, because of the inadequacy of any legal remedy, do not hesitate to set aside such contracts, upon proof of failure to perform by the grantee. Such courts are not so much concerned as to the proper theory upon which such contracts may be avoided, as they are that they must be set aside in order to prevent grave injustice and the imposition upon aged people, by unscrupulous persons, who pretend love, devotion, and friendship, where no one of such elements exists. Cancellation is the only adequate remedy applicable to such a case, where there is a refusal or intentional failure to perform. This being true, it is only natural that we should find the courts at variance, upon the proper equitable ground upon which such cancellation should be predicated."

The application of the rule of law invoked by plaintiff was made in Anderson v. Reed, supra, and in the following cases which illustrate it:

"Such contracts have come to be looked upon as almost if not quite presumptively improvident in their inception, and in that view courts of equity have gone to great lengths to remedy the mischief by reading out of them a condition, where a covenant only is expressed, upon which may be founded, on principle, a right of rescission where justice requires it for the protection of the weak, the exercise of which will undo the mischief ab initio and restore the parties, substantially, to their original situation.

"In this case it seems that the hope and expectation of filial regard was the moving cause on the part of respondent in transferring his property to his son. * * * The contract reposed in appellant a trust of the most important character—that of caring for the daily wants of an aged parent in health and sickness to the end of his life, —a trust which only the trustee, under proper conditions, could properly exercise —one that never ought to be delegated, never can be properly delegated to another not in the same relation." Glocke v. Glocke, 113 Wis. 303, 89 N.W. 118, 121, 57 L.R.A. 458.

"This court has by a long line of adjudications settled the rule that for such breach of conditions a court of equity will, upon

proper pleadings, set aside such conveyance and agreement, and do equity between the parties, especially in favor of an aged woman in the condition of the plaintiff at the time of the execution of the papers in question. * * * The principles upon which the rule is based are exhaustively considered in the cases cited, and need no repetition. It is enough to say that they go upon the theory that property thus conveyed shall remain intact for the security of the conditions thus annexed to the grant." Morgan v. Loomis, 78 Wis. 594, 48 N.W. 109, 111.

"The facts alleged are not sufficient to constitute a cause of action for specific performance, for the reason that the consideration which appellant agreed to pay on his part included intimate personal services of himself and his wife, expressed by the stipulation that they should 'make a home for the appellee, board and care for him.' It is obvious that the court would have no means of compelling the appellant and his wife during the remainder of appellee's life to perform all those intimate services due from a son and daughter-in-law which are implied by the undertaking to make a home for the father and to care for him; and a court will not compel one party to perform when performance by the other cannot also be enforced." Hoppes v. Hoppes, 190 Ind. 166, 129 N.E. 629, 630.

" * * * There is in such transactions an element of confidence reposed by the old people in their grantee, sacred in its nature, a breach of which, and retention of the benefits, no court should tolerate by a refinement upon technical rules and principles of law. By the modern trend of authority these transactions are placed in 'a class by themselves, and enforced without reference to the form or phraseology of the writing by which they are expressed, or whether by the strict letter of the law a forfeiture of the estate is expressly provided for. The Wisconsin Supreme Court recently has taken a broad view of such contracts, and laid down a rule which commends itself as fair and equitable, and results in effectuating the intention of the parties to the transaction. The agreement of support, whatever its form, is construed by that court as a condition subsequent, and not a mere covenant." Bruer v. Bruer et al., 109 Minn. 260, 123 N.W. 813, 814, 28 L.R.A., N.S., 608.

Also, see Berry v. Heiser, 271 Ill. 264, 111 N.E. 99; Stephens et al. v. Daly, 49 App. D.C. 389, 266 F. 1009; Roudebush v. Gannon et al., 92 Wash. 508, 159 P. 680; Cooper v. Gum, 152 Ill. 471, 39 N.E. 267; Chadwick v. Chadwick, 59 Mich. 87, 26 N.W. 288; Tysor v. Adams, 116 Va. 239, 81 S.E. 76, 51 L.R.A.,N.S., 1197; Gall v. Gall, 126 Wis. 390, 105 N.W. 953, 5 L.R.A.,N.S., 603; McClelland v. McClelland, 176 Ill. 83, 51 N. E. 559; Mooney v. Mooney, 208 Ala. 287, 94 So. 131; Lowman v. Crawford, 99 Va. 688, 40 S.E. 17; Fabrice et al. v. Von der Brelie, 190 Ill. 460, 60 N.E. 835; Knutson v. Bostrak, 99 Wis. 469, 75 N.W. 156; Ptacek et ux v. Pisa et al., 231 Ill. 522, 83 N.E. 221, 14 L.R.A.,N.S., 537; White, Executor, v. Bailey, 65 W.Va. 573, 64 S.E. 1019, 23 L.R.A.,N.S., 232; O'Ferrall v. O'-

Ferrall et al., 276 Ill. 132, 114 N.E. 561; Payette v. Ferrier et al., 20 Wash. 479, 55 P. 629; Leary v. Corvin et al., 181 N.Y. 222, 73 N.E. 984, 106 Am.St.Rep. 542, 2 Ann.Cas. 664; Lane et al. v. Lane, 106 Ky. 530, 50 S.W. 857; Schell v. Plumb et al., 55 N.Y. 592; Grant v. Bell et ux., 26 R.I. 288, 58 A. 951; Sherrin et al. v. Flinn, 155 Ind. 422, 58 N.E. 549; Thorbahn v. Walker's Estate, supra; Washington Market Co. v. District of Columbia, supra; Spencer v. Williams, supra, Perry v. Neel, supra.

The case is no different than if plaintiff had paid $3500 in cash for the promise. He parted with his debt as he would have with the money in the supposed case. He never owned any interest in the land in question nor did he convey any to defendant; and the parties had no agreement by the terms of which defendant is entitled to an equitable lien thereon.

■ Assuming that plaintiff was, at the time of the agreement, entitled to (and could have obtained) a statutory lien against the property in question to secure his debt; and assuming that, in a proper case, this court would lay hold upon this fact as a ground (or excuse) for impressing an equitable lien to secure the amount due an aged person coming within the class entitled to relief, upon the theory of a right to rescission; could we do so in this case, in which none of the reasons for the rule exist, and in which no such issue was made by the pleadings or proof? The sole and only ground proved or claimed (the allegations did not conform to the proof in some re-

spects) for granting to plaintiff this extraordinary relief, is the fact that at his solicitation defendant accepted his offer to cancel a debt in consideration of an agreement to board him for life, etc., which, after a number of years, was breached by defendant because of inability to perform further. These facts are not grounds for such relief.

■ It is claimed that if plaintiff was not entitled to a lien, yet the court should have entered judgment for the amount of damages to which the parties had agreed that the plaintiff was entitled, upon the theory that as equity had obtained jurisdiction of the parties and the subject matter of the action it could adapt the relief to the facts and enter a proper judgment in order to prevent a failure of justice. The rule under the code system is: "Thus it may be regarded as a settled rule, resulting from the statutory provision in question, that if a plaintiff has set forth facts constituting a cause of action, and entitling him to some relief, either legal or equitable, his action shall not be dismissed because he has misconceived the nature of his remedial right, and has asked for a legal remedy when it should have been equitable, or an equitable remedy when it should have been legal. * * * A suit does not now fail because the plaintiff has erred as to the form or kind or extent of the remedy he demands. A party cannot be sent out of court merely because the facts alleged do not entitle him to relief in equity, if the case which he states shows him entitled to any relief, either legal or equitable, his com-

plaint is not to be dismissed because he has prayed for a judgment that is not embraced by the facts. * * *" Pomeroy's Code Remedies, Sec. 11.

But it was plaintiff's theory in the district court that he was entitled to an equitable lien upon the property in question to secure his debt which represented an interest in the property, not to recover a judgment or foreclose such lien. No other question was presented to the district court by either party, and it cannot be raised for the first time in this court. Thomas et al. v. Johns, 35 N.M. 240, 294 P. 327.

It is not the duty of the district court to grant relief not requested in some manner by plaintiff, and not within the theory upon which his case was tried. The court might rightfully conclude that plaintiff did not desire a judgment at law for the debt, even though the court was authorized to enter it.

As we view the case, plaintiff's remedy was a suit for breach of contract. The fact that the contract is a continuing one does not prevent a determination of the damages as of the time of its breach. Roehm v. Horst, 178 U.S. 1, 20 S.Ct. 780, 44 L.Ed. 953.

If the parties have agreed upon the measure of damages as the evidence seems to indicate, their agreement is binding on this court. Marchant v. McDonald, 37 N.M. 171, 20 P.2d 276.

The plaintiff had a remedy by judgment at law and execution thereon, or by attachment, notwithstanding the alleged fraudulent transfer of the property, N.M. Sts.1929, Sec. 46-124 and Sec. 105-1601; or perhaps by creditor's bill, Huneke v. Dold, 7 N.M. 5, 32 P. 45; Early Times Distillery Co. v. Zeiger, 9 N.M. 31, 49 P. 723; or by judgment, execution and supplementary proceedings subsequent to execution. N.M. Sts.1929, Sec. 46-125. But he had no interest in, or claim on, the real estate by reason of his contract for support and its breach.

Assuming that the facts alleged authorized a personal judgment against the defendant, or constituted a sufficient creditor's bill (Early Times Distillery Co. v. Zeiger, supra); yet it appears that the case was instituted and tried in the district court solely upon the theory that plaintiff had some interest in this property, represented by his claim against defendant, by reason of which he was entitled to have impressed against it an equitable lien.

Parties cannot upon appeal change their contentions, shift their positions nor advance new and different theories from those made and advanced in the trial court. American Investment Co. v. Lyons, 29 N.M. 1, 218 P. 183; Smith v. Borradaile, 30 N.M. 62, 227 P. 602; Springer Ditch Co. v. Wright, 31 N.M. 457, 247 P. 270; Albuquerque Lbr. Co. v. Tomei, 32 N.M. 5, 250 P. 21.

The decree of the district court is affirmed, reserving to plaintiff his right of

action at law, or by creditor's bill if he so elects.

It is so ordered.

BICKLEY, SADLER, and ZINN, JJ., concur.

HUDSPETH, Chief Justice (dissenting).

I am unable to concur in the opinion of the court. In my opinion this case falls in the class where the agreement for support of an aged person forms the basis of a lien on the property conveyed. The law applicable appears in Restatement of the Law of Restitution, p. 650, as follows:

"§ 161. Equitable Lien.

"Where property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises.

"Comment:

"a. A court of equity may give restitution to the plaintiff and prevent the unjust enrichment of the defendant not only by imposing a constructive trust and compelling the surrender to the plaintiff of property held by the defendant (see § 160), but also by imposing an equitable lien upon the property in favor of the plaintiff. In some situations the plaintiff is entitled only to enforce an equitable lien; in others he can at his option enforce either an equitable lien or a constructive trust. * * *"

1 Perry on Trusts, Blade's Ed., sec. 226, p. 399, says: "But where a valuable interest passes to one on the faith of a contract he refuses to perform, equity will compel restitution or give other appropriate relief. * * *"

The learned trial court seems to have followed the line of decisions holding that without fraud or overreaching on the part of the defendant in the inception the court will afford no relief. See Lavely v. Nonemaker, 212 Cal. 380, 298 P. 976. Relief of grantor in conveyances in consideration of agreement to support which is broken by grantee is the subject of annotations in 43 L.R.A.,N.S., 916, L.R.A.1917D, 627, and 12 Ann.Cas. 899. In L.R.A.1917D, 627, the annotator states: "The rule stated in the note appended to Dixon v. Milling Co., supra [102 Miss. 449, 59 So. 804, 43 L.R.A., N.S., 916], that, by the weight of authority, where an agreement to support is the consideration for a conveyance of property, it must be performed by the grantee or the grantor may have the contract rescinded, receives the support of the majority of the cases passing upon the question since this note. Thus, it is held that equity will set aside a deed for breach by the grantee of his agreement to support the grantor where this agreement formed the consideration for the deed. * * *" citing Sanchez v. Sanchez, 22 N.M. 95, 159 P. 669; Anderson v. Reed, 20 N.M. 202, 148 P. 502, L.R.A.1916B, 862, and numerous other cases.

The lots upon which the building was constructed by plaintiff were conveyed to the defendant and his wife, Alice Keck, and the contract was made by the plaintiff with them. The plaintiff on cross examination testified:

"Q. Now, did you have any conversation with Mrs. Keck about the building of this property? A. Yes.

"Q. In fact Mrs. Keck was the one you mainly had this business dealing with? A. Both of them."

The motion to dismiss reads, in part, as follows: "that the testimony discloses that the plaintiff entered into the contract by reason of the personal services to be rendered by the deceased, Mrs. Alice Keck; that said Mrs. Alice Keck died on September 11, 1935; that up to the time of her death, and subsequent thereto for at least a short period of time the plaintiff Van Sickle boarded at the restaurant of the Kecks', and the testimony further discloses that during her lifetime Mrs. Keck, the deceased, complied with her agreement to board the plaintiff, * * *"

Following the case of Marcum v. Marcum, 94 W.Va. 686, 120 S.E. 73, 34 A.L.R. 133, at page 136, there is an annotation on "Rights and remedies in respect of the property upon the death, in the lifetime of grantor, of the grantee in a deed in consideration of future support". The annotator states: "Generally, covenants in effect to care for and support the grantor in consideration of a conveyance of real estate are construed to be based upon a consideration so peculiar that the total or partial failure of this consideration requires relief of a special character. In the matter of relief to the grantor, such transactions are in a class by themselves. Where the grantor survives the grantee, who, during life, faithfully performed the covenant to support, such relief will be given the grantor as the circumstances and equities of the particular case may require," citing Stephens v. Daly, 49 App.D.C. 389, 266 F. 1009, and cases from Ala., Ga., Ill., Ind., Kan., Ky., Mich., Va., Wash., and Wis. It is true that there was no agreement that plaintiff should have a lien on the property involved in this suit. However, there is no question but that he would have been entitled to a mechanic's lien under out statute. Hobbs v. Morrison Supply Co., 41 N. M. 644, 73 P.2d 325. Nor can it be doubted that the plaintiff had this in mind. On cross examination he said: "I was building the building for him and supposed to have a claim on it when I got through." Within the time allowed for filing the lien the agreement for support and burial was made. The right to a lien was a valuable property right and might constitute the corpus of a trust. Griffith v. Tierney, 34 N.M. 387, 281 P. 461.

The only reason suggested for defendant's inability to carry out the agreement for support was his intemperate habit—drunkenness—for a time habitual.

On a motion to dismiss the agreement for support and burial itself furnishes suffi-

cient evidence of age of the plaintiff; but there is other evidence. The plaintiff is no longer following his trade of carpentry, but is keeper of the village hardware store. He testified:

"Q. What business were you then engaged in up there, and what business are you now engaged in? A. At that time I was doing carpenter work, and now I am in the hardware business mostly.

"Q. When you first went up there did you or not engage in the contracting business,—building summer cottages for people? A. Yes."

The majority opinion states that the defendant and the plaintiff are not related. Consanguinity or affinity is not a necessary condition. Anderson v. Reed, supra; Jancovech v. Christensen, 100 Ind.App. 299, 195 N.E. 287; Tysor et ux. v. Adams, 116 Va. 239, 81 S.E. 76, 51 L.R.A.,N.S., 1197. Nor is it important who was the mover or who first suggested the making of the agreement for support. Anderson v. Reed, supra; Marcum v. Marcum, supra; Jancovech v. Christensen, supra. And the only evidence of plaintiff's net worth is that he was unable to borrow for investment the sum of $4056.59. This hardly justifies the presumption that he is a man of wealth. Improvidence seems to be a characteristic of old people who enter into this class of contracts, but benevolence should not be penalized.

The reference in the majority opinion to plaintiff's offer to give the money, which it had been agreed was due him, to Mrs. Keck's nieces, who came out before her death and who had been and were at the time of the offer rendering services under humiliating conditions due to the defendant's drunkenness, may seem irrelevant, but when considered with other facts relating to the Keck household appearing in the record, clearly prove that plaintiff was not a stranger within their gates. Plaintiff later furnished funds, at the nieces' request, with which they returned to their home in Pennsylvania. The following testimony also appears: "There was an additional amount which Mr. Van Sickle claimed, which he at different times referred to with Mr. Keck, and that was with respect to disbursements made not in connection with the erection of the building, but after Mr. Keck had been sick and laid up, constituting several payments on the car, and he also admitted Mr. Van Sickle had made all funeral arrangements, and had paid part cash and had executed his note whereby he agreed to pay to the undertaker the balance of approximately $400.00." The fact that plaintiff slept in his own cabin is mentioned, but he seems to have been a useful member of the household. He buried Mrs. Keck although he seemed not to have had sufficient cash in hand to pay the funeral expenses, and furnished funds to her stranded relatives with which to return to their home.

The Statute of Frauds should be no more a barrier to relief in this case where plaintiff was entitled to a statutory lien at the time of the making of the contract for support and burial than in the cases where persons gave absolute deeds in consideration of oral

promises for future support. In Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A.L.R. 1173, the court quoted with approval from Wood v. Rabe, 96 N.Y. 414, 48 Am.Rep. 640, as follows (page 422): " 'There are two principles upon which a court of equity acts in exercising its remedial jurisdiction, which, taken together, in our opinion entitle the plaintiff to maintain this action. One is that it will not permit the statute of frauds to be used as an instrument of fraud, and the other, that, when a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he cannot conscientiously retain, the court, to prevent the abuse of confidence, will grant relief. * * * The principle that when one uses a confidential relation to acquire an advantage which he ought not in equity and good conscience to retain the court will convert him into a trustee, and compel him to restore what he has unjustly acquired, or seeks unjustly to retain, has frequently been applied to transactions within the statute of frauds.' " In the case of Reid v. Burns, 13 Ohio St. 49, decided in 1861, by divided court, it was held that where land was purchased by a father in the name of his son, under an oral agreement by the latter to give a home to and support the former upon the land purchased, that by the breach of the agreement to support the contract was rescinded, and the title to the land vested in the father, although the son had conveyed it to a third person who had knowledge of the contract. In Lowman v. Lowman, Ind.App., 12 N.E.2d 961, 969, a case where land was sold by a commissioner in a partition suit, the appellee being one of the owners and having furnished 80% of the purchase price to the appellant, the court said: "If the conveyance had been made directly by the appellant to the appellees, we think an equity court would have no difficulty in holding that the said conveyance, being made upon a condition subsequent, which was breached by the appellees, would either be set aside or the real estate impressed with a lien in favor of the appellant. See Huffmond et al. v. Bence, Adm'r, 128 Ind. 131, 27 N.E. 347; Hamilton et al. v. Barricklow et al., 96 Ind. 398; Zoellers v. Loi, Adm'r, 68 Ind.App. 395, 120 N.E. 623, 624. But the allegations are that the conveyance was made to the appellees by the commissioners appointed by the court to make the sale in the partition proceedings. Will this fact alone be sufficient to prevent the court from enforcing its judgment by an equitable lien? We think not. Equity will look through the transaction and consider not alone its form, but also its substance. We quote from Barrett v. Lewis, 106 Ind. 120, 5 N.E. 910, the following: 'The lien which arises in favor of the vendor of land, or of the person to whom purchase money is due, is peculiarly of equitable cognizance. Equity has regard, in such cases, as in others, for the substance, and not the mere form, of the transaction. Disregarding form, a court of equity will not permit substantial equities which are clearly established to be defeated by the interposition of merely nominal or technical distinctions. If, upon looking through the transaction, it appears that a debt is in fact

part of the purchase price of land acquired in the transaction out of which the debt arose, no other obstacle intervening, a lien will be declared upon the land so acquired in favor of the person to whom such debt is due.'" See Houston v. Greiner, 73 Or. 304, 144 P. 133. 36 Harv.L.R. 488, says: "Further, there is more reason for refusing rescission in a sale for cash, where the vendor could, if he wished, have retained title as security, than in a case such as the present, where no grantee would consent to such retention of title, in view of the fact, that his own performance is impossible of fulfillment until the grantor's death. It is immaterial to the merits of the plaintiff's case that the defendant's remainder was granted by an outsider, instead of being deeded directly by the complainant. Cf. Houston v. Greiner, supra. Rescission of the deed, however, will not give the plaintiff title. The court properly, then, made use of the remedial machinery of a constructive trust. Cf. Grant v. Bell, 26 R.I. 288, 58 A. 951." In Abbott v. Sanders and Wife, 80 Vt. 179, 66 A. 1032, 13 L.R.A.,N.S., 725, 130 Am.St.Rep. 974, 12 Ann.Cas. 898, the court said: "In many cases in different jurisdictions, deeds given to secure the grantor's support have been annulled on general grounds of equity, without much attempt to refer the relief to any specific rule. Peck v. Hoyt, 39 Conn. 9; Penfield v. Penfield, 41 Conn. 474; Jenkins v. Jenkins, 3 T.B.Mon. [Ky.] 327; Reeder v. Reeder, 89 Ky. 529, 12 S.W. 1063; Patterson v. Patterson, 81 Iowa, 626, 47 N.W. 768; Dodge v. Dodge, 92 Mich. 109, 52 N.W. 296; Rex-

ford v. Schofield, 101 Mich. 480, 59 N.W. 837; Wilfong v. Johnson, 41 W.Va. 283, 23 S.E. 730. In Illinois the court rescinds the transaction, presuming, if necessary to the relief, that the conveyance was obtained with fraudulent intent. Frazier v. Miller, 16 Ill. 48; Oard v. Oard, 59 Ill. 46; Cooper v. Gum, 152 Ill. 471, 39 N.E. 267. In Oregon it is considered that rescission is not permissible, and the grantor's support is secured by making it a charge upon the property. Watson v. Smith, 7 Or. 448; Patton v. Nixon, 33 Or. 159, 52 P. 1048. In Rhode Island a reconveyance is decreed, upon the theory that the deed creates a continuing obligation in the nature of a trust, and that the failure to support is a renunciation of the trust. Grant v. Bell, 26 R.I. 288, 58 A. 951." In all these cases the courts prevented unjust enrichment of defendants who had abused the confidence of old people.

When the defendant and his wife took plaintiff's property in exchange for promise for support and burial a fiduciary relation was created. The plaintiff had confidence in them. He turned over his property to them without security, which he could have easily obtained by the filing of a statutory lien.

The Florida court in Quinn v. Phipps, supra, also quotes from the Supreme Court of Illinois, Mayrand v. Mayrand, 194 Ill. 45, page 48, 61 N.E. 1040, page 1041, as follows: "The term 'fiduciary' or 'confidential' relation, * * * is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which

influence has been acquired and abused—in which confidence has been reposed and betrayed. The origin of the confidence is immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist wherever one man trusts in and relies upon another. * * * "

In Dawson v. National Life Ins. Co., 176 Iowa 362, 157 N.W. 929, 933, L.R.A.1916E, 878, Ann.Cas.1918B, 230, the Supreme Court of Iowa said: "The fiduciary relation may exist wherever special confidence is reposed, whether the relationship be that of blood, business, friendship, or association, by one person in another who are in a position to have and exercise or do have and exercise influence over each other. * * * "

In Zeigler v. Coffin, 219 Ala. 586, 123 So. 22, 63 A.L.R. 945, the court said: "Confidential relations 'exist wherever confidence is reposed and accepted, and the one has it in his power, in a secret manner, for his own advantage, to sacrifice those interests of the other which he is bound in honor and good conscience to protect. I Story, Eq.Jur. § 323. The rule embraces both technical fiduciary relations and those informal relations whenever one man trusts and relies upon another.' * * * "

2 Words and Phrases, Fourth Series, p. 49, states:

" 'Fiduciary relation' may exist in all cases where there has been special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to interest of one reposing the confidence. It arises wherever trust continuous or temporary is specially reposed in the skill or integrity of another, or property or pecuniary interest in whole or in part or the bodily custody of one person is placed in the charge of another. Patton v. Shelton, 328 Mo. 631, 40 S.W.2d 706, 712. * * *

"The term 'fiduciary relation' is a broad one not susceptible of exact definition. It may exist under variant circumstances. It is said to exist 'when there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence.' Roecher v. Story [91 Mont. 28], 5 P.2d 205, 210.

"A 'fiduciary relation' is not limited to cases of trustee and cestui que trust, guardian and ward, attorney and client, or other recognized legal relations, but it exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. Catherwood v. Morris, 345 Ill. 617, 178 N.E. 487, 493.

" 'Fiduciary relation' exists where there is special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to interests of one reposing the confidence. Neagle v. McMullen, 334 Ill. 168, 165 N.E. 605, 608.

" 'Fiduciary relation' exists where there has been a special confidence reposed in one who in equity and good conscience is

bound to act in good faith and with due regard to interests of one reposing confidence. Abbitt v. Gregory, 201 N.C. 577, 160 S.E. 896, 906. * * *

"Whenever influence is acquired and abused, or confidence is reposed by one and accepted by another, 'fiduciary relation' exists, within protection of equity. Swiney v. Womack, 343 Ill. 278, 175 N.E. 419, 423."

25 C.J. 1118, is as follows:

"Fiduciary Relation.—a. In General. It is difficult to define the term 'fiduciary relation;' it is a very broad one.

"(§ 9) b. When It Exists. It is a relation in which, if a wrong arises, the same remedy exists against the wrong-doer on behalf of the principal as would exist against a trustee on behalf of the cestui que trust. The relation may exist under a great variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith, and with due regard to the interests of the one reposing the confidence. It arises wherever a trust, continuous or temporary, is specially reposed in the skill or integrity of another, or the property or pecuniary interest, in the whole or in a part, or the bodily custody of one person is placed in the charge of another. Courts of equity have refused to set any bounds to the circumstances out of which a fiduciary relation may spring. It not only includes all legal relations, such as attorney and client, broker and principal, executor or adminis-trator, and heir, legatee or devisee, factor and principal, guardian and ward, husband and wife, partners, principal and agent, trustee and cestui que trust, but it extends to every possible case in which a fiduciary relation exists in fact, and in which there is confidence reposed on one side and resulting domination and influence on the other. * * * the origin of the confidence and the source of the influence are immaterial. * * *"

Rest.Restitution, § 201(1) says: "Where a fiduciary in violation of his duty to the beneficiary transfers property or causes property to be transferred to a third person, the third person, if he gave no value or if he had notice of the violation of duty, holds the property upon a constructive trust for the beneficiary."

Rest.Contracts, § 384, says: "(1) Damages and restitution are alternative remedies, only one of which will be given as a remedy for a breach of contract."

5 Williston on Contracts, Rev.Ed., p. 4064, states: "The right of rescission and restitution generally exists as an alternative remedy to an action for damages where there has been repudiation or a material breach of a contract, and is most commonly exercised when the aggrieved party has performed fully or in part, and wishes to recover what he has given or its value. * * *" And on page 4068 of the same volume appears: "Where the consideration of the conveyance is a promise to support the grantor, failure by the grantee to perform will ordinarily justify rescission

and cancellation of the conveyance. * * * "

In Dennerlein v. Martin, 247 N.Y. 145, 159 N.E. 891, the court said (page 892): "Though the evidence does not establish that the conveyance of plaintiff's property was induced by fraud, yet doubtless she may be entitled to a decree rescinding that conveyance if the defendant willfully fails and refuses to carry out her promise to provide suitable support and other remedy would be inadequate. In consideration of that promise the plaintiff stripped herself of her property; if the consideration totally fails she may demand back what she has paid. See opinion of Kellogg, J., in Rosenwasser v. Blyn Shoes, Inc., 246 N.Y. 340, 159 N.E. 84, and case cited therein. * * * "

In Rosenwasser v. Blyn Shoes, Inc., referred to above, the court stated (page 85): "The cases are authority for the proposition that the default must be such that it destroys the essential objects of the contract. It has likewise been said that rescission, and a recovery of moneys paid, may not be had where the default is in respect to a contract provision which is merely 'subsidiary' and 'which does not go to the entire consideration' (Johnson Forge Co. v. Leonard, 3 Pennewill (Del.) 342, 51 A. 305, 57 L.R.A. 225, 94 Am.St.Rep. 86); that the 'breach of * * * an independent covenant, a covenant which does not go to the whole consideration of the contract and is subordinate and incidental to its main purpose,' is not sufficient (Kauffman v. Raeder (C.C.A.) 108 F. 171, 179, 54 L.R.A. 247); that 'the object of the contract must have been defeated or rendered unattainable' by a default in respect to a matter 'of first importance to the accomplishment of the object of the contract' (Selby v. Hutchinson, 4 Gilman (Ill.) 319, 333); that the default must be 'destructive of the objects of the contract' (Mahon v. City of Columbus, supra [58 Miss. 310, 38 Am.Rep. 327]); that it must be 'so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract'; and that there must be 'a breach going to the root of the contract.' Callanan v. Keeseville, A. C. & L. C. R. Co., supra [199 N.Y. 268, 92 N.E. 747]. * * * "

The plaintiff prayed for an equitable lien and asked for much less than he would have been entitled to under the sound rule followed in Chadwick v. Chadwick, 59 Mich. 87, 26 N.W. 288, of adding interest to the amount due plaintiff and deducting the amount agreed upon as the value of plaintiff's board. The status quo can be restored in this case where plaintiff was entitled to a lien as well as where land has been conveyed. The rule applies to choses in action of this class. Sec. 354, Rest. Contracts, reads as follows:

"Specific Restitution of Land, Goods and Certain Choses in Action. If the performance received from the plaintiff by the defendant is the transfer of land, or of goods or choses in action of a unique character, and the defendant thereafter commits a total breach, the plaintiff can get a decree,

on such terms as justice may require, for the specific restitution and retransfer of the property if the circumstances are such that other remedies are inadequate, and if

"(a) the subject of the property still exists and the interests of innocent purchasers for value and of the defendant's creditors will not be unjustly affected; * * *

"Comment:

"a. Where the buyer of land commits a total breach after its transfer to him, the vendor's remedies by way of decree for specific performance or judgment for the contract price or for damages or for restitution in money are usually sufficient to do justice, especially where there is security afforded by a grantor's lien or a mortgage. There are cases, however, in which such a judgment or decree is incapable of enforcement, and either there is no lien or mortgage on which to rely or the security is inadequate because of the impossibility of selling at an adequate price. There are also cases where the defendant has promised a performance other than the payment of money, as where he has promised to support the plaintiff for life, in which a decree for specific performance is not available and a judgment for damages would be an inadequate remedy. In such cases, specific restitution is a remedy that the courts have power to grant. * * *"

And Rest.Contracts, sec. 355, states:

"Restitution with Respect to Contracts within a Statute of Frauds. (1) The rules governing restitution as a remedy against one in default on a contract that is unenforceable by reason of a Statute of Frauds are the same as in the case of contracts not within the Statute, except as qualified by the rules stated in Subsections (2, 3). * * *"

Many courts have followed the course of fixing an equitable lien in cases of this sort rather than rescission. In Re Waterson, Berlin & Snyder Co., 2 Cir., 48 F.2d 704, the court said (page 709): "Moreover, such a drastic remedy as rescission has often been withheld, and an equitable lien upon the subject-matter involved has been substituted even where rescission might have been allowed. This is illustrated in various cases where conveyances of land have been made in consideration of maintenance and support. Rescission has sometimes been granted because of a fundamental breach of the contract on the part of the grantee. Russell v. Carver, 208 Ala. 219, 94 So. 128; Russell v. Robbins, 247 Ill. 510, 93 N.E. 324, 139 Am.Rep. 342; Maddox v. Maddox, 135 Ky. 403, 122 S.W. 201; Grant v. Bell, 26 R.I. 288, 58 A. 951; Sweeny v. Patton, 134 Va. 117, 113 S.E. 715. But in other cases the relief afforded has been through the imposition of an equitable lien upon the property conveyed, enforceable at the suit of the grantor. Stephens v. Daly, 49 App.D.C. 389, 266 F. 1009; Chase v. Peck, 21 N.Y. 581; Stehle v. Stehle, 39 App.Div. 440, 57 N.Y.S. 201; Webster v. Cadwallader, 133 Ky. 500, 118 S.W. 327, 134 Am.St.Rep. 470; Simmons v. Shafer, 98 Kan. 725, 160 P. 199; Patton v. Nixon, 33 Or. 159, 52 P. 1048; Abbott v.

Sanders, 80 Vt. 179, 66 A. 1032, 13 L.R.A., N.S., 725, 130 Am.St.Rep. 974, 12 Ann.Cas. 898; Morgan v. Loomis, 78 Wis. 594, 48 N.W. 109. The Court of Appeals of Virginia said in Keister v. Cubine, 101 Va. 768, 45 S.E. 285, 286, when imposing a lien, instead of ordering a rescission and decreeing a reconveyance: 'The power of a court of equity in a proper case to rescind the contract and restore the property to the grantor would certainly include the power to afford a less drastic relief, if the facts pointed to the latter as more consonant with justice.' * * *"

In Leary v. Corvin et al., 181 N.Y. 222, 73 N.E. 984, 106 Am.St.Rep. 542, 2 Ann. Cas. 664, the court said (page 986): "It does not follow, however, that the plaintiff is entitled to no relief. She made her contribution to the purchase of the property on the faith of an agreement with her father, which he has violated by failing to secure to her the property upon his death, and the relation between the parties was one of trust and confidence. The plaintiff's money having been thus appropriated to the acquisition of the property, she has an equitable lien thereon for its amount; and, as she has been induced to let it remain in the property in reliance upon her father's promise, without receiving any compensation therefor, now that that promise has been violated she is justly entitled to interest from the time of the original payment to her father.' * * *"

There is an annotation on Conveyance in Consideration of Support as creating lien or charge upon the land conveyed in 64 A. L.R., p. 1250. In Bruer v. Bruer et al., 109 Minn. 260, 123 N.W. 813, 28 L.R.A.,N.S., 608, the court held (page 815): "In view of the decisions of this court in the cases referred to, and the general trend of judicial opinion elsewhere (Abbott v. Sanders, 80 Vt. 179, 66 A. 1032, 13 L.R.A.[N.S.] 725 [130 Am.St.Rep. 974, 12 Ann.Cas. 898]), we are of opinion, and so hold, that the form of agreement of support is unimportant. Its effect is in no way changed, whether it appear in the body of the conveyance, or in a separate instrument by way of bond or mortgage; and, as it appears in this case the defendant had failed and refused to carry out the conditions of his agreement, plaintiff is entitled to such relief as the evidence may, on trial, show her entitled to. We cannot hold, in view of prior decisions, that the agreement constituted a condition subsequent, entitling plaintiff to a return of the land; but, as remarked in the Johnson Case [Johnson v. Paulson], [103 Minn. 158, 114 N.W. 739] the court may grant such relief as the facts will in equity and good conscience justify. For this relief the complaint is sufficient, and contains all necessary and essential allegations."

The sole cause of defendant's condition, so far as the record shows, is due to his intemperance. Drunkenness is not an excuse for failure to carry out an agreement to support, nor does it excuse the transfer of the property in an effort to defraud plaintiff. In my view of the case the de-

fendant has no right to take by inheritance free of lien for the future support of plaintiff his wife's half of the property. The judgment will shock the conscience of those who believe that right should prevail.

For the reasons stated I dissent.